THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STEVEN ARTHUR CAMEL, Defendant-Appellant.

(No. 11552;

Fourth District—April 12, 1973.

Robert I. Auler, of Champaign, for appellant.

Lawrence E. Johnson, State's Attorney, of Urbana, (Thomas L. Knight, Assistant State's Attorney, and Scott Murphy, Senior Law Student, of counsel,) for the People.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

The defendant was convicted in a bench trial of rape and aggravated kidnapping. He was sentenced to a term of not less than 10 nor more than 25 years in the Illinois State Penitentiary, the sentences to run concurrently. Upon this appeal, he asserts that the trial court committed error in denying discovery of certain evidence before trial; that he was denied his right to counsel at the preliminary hearing; and that the in-court identification was based upon unduly suggestive show-up or photographic identification; and that the trial court prohibited certain offers of proof. Other evidentiary rulings are also assigned as error.

On March 17, 1970, Joanne Hinton, then age 16, was walking from her home to Champaign Central High School in Champaign, Illinois. As was her usual custom, she was following a route that would take her

by way of the home of a girl friend with whom she walked to school. Joanne had left her home around 8:00 o'clock in the morning of the date in question.

A man walking in the same direction as Miss Hinton passed her, then stopped and turned around and inquired of her as to the location of the university. Miss Hinton pointed in the general direction of the university. The man had a scarf on that covered the lower portion of his face up to about the middle of his nose.

Miss Hinton crossed the street to avoid further encounter with the man; however, he followed her and again asked her the location of the university. The conversation at that point was described by Miss Hinton in her testimony as follows:

"Where's the university?

You have a long ways to go.

I have a gun, and I don't want to hurt you. All I want is your money.

You can have it.

I don't want to take it here. Come with me if you don't want to get hurt."

The man placed a knife at her back and they walked to a car described as "greenish-blue". She got in and sat on the passenger side. She was told to keep her head down close to her knees. The man then placed a blindfold over her eyes. When she began to cry, he placed the knife at her throat and ordered her to stop crying. After driving for what was described as a few minutes, the car was stopped and the girl's hands were tied behind her back. The man ordered the girl to take off her underpants but she was unable to do so because her hands were tied. He then removed the underpants himself, started to drive again, and ordered the girl to get into the back seat of the car. Ultimately, she got into the back seat of the car; the man stopped the car, climbed into the back seat, and raped the girl. She stated that she did not attempt to fight him because she was scared she would be hurt.

Miss Hinton was then driven by the man to Westside Park in Champaign, was told to face the opposite direction of the car, and not to look back until the car was gone. She testified that she did not look back, but instead ran to the high school. She there made an immediate complaint to the dean of girls as to the preceding events. She arrived at the high school around 9:00 A.M. Miss Hinton was thereafter taken by her mother to a Doctor Kelso for purposes of examination.

Later that same morning, Miss Hinton talked to officers of the Champaign Police Department, gave a statement to officer Voss, and in the statement gave a physical description of her assailant as around 5 feet

8 inches tall, of small build, with dark brown hair combed over his forehead, having small hazel eyes, of medium voice, and wearing a brown corduroy jacket of three-quarter length. His age was described as between 21 and 22 years.

Also, on the day of the offense, the police asked Miss Hinton to view certain prisoners on a closed-circuit television at the police department. She did so, but did not identify any of the persons viewed as her attacker. About a month later, the prosecutrix looked at a large number of photographs at the police station but did not identify her attacker as being among the photographs shown to her. In her testimony, she stated that she did not see the defendant on the closed-circuit television, nor recall seeing photographs of him at the time of the photographic viewing.

On May 28, 1970, Miss Hinton and her father were present at a preliminary hearing. She and her father were unaware that the defendant was to be present and unaware that they were there for purposes of any identification. At the time of that hearing, Miss Hinton made a positive identification of the defendant, Steven Arthur Camel, as her attacker.

Joyce Parkhill and her son, Bill, then age 13, were called as witnesses for the prosecution. The substance of their testimony was that Mrs. Parkhill was driving the son to school at around 8:00 o'clock in the morning on March 17, 1970. They saw a car stopped at an intersection near John Street in Champaign, Illinois. As they pulled alongside the stopped car they saw a young man in the car with a muffler around the lower part of his face. Mrs. Parkhill, a portrait artist, described the facial characteristics and described the car as a blue-green vehicle. Bill Parkhill likewise described the facial characteristics of the man with the muffller and also indicated that he saw a girl crouched down in the passenger side of the front seat of the car. She was wearing a black and white hat and he testified that the hat he saw looked like the hat worn by Joanne Hinton on the day she was kidnapped. Mrs. Parkhill and Bill were shown five photographs. Bill Parkhill identified a photograph of the defendant as his second most likely choice as a picture of the man he saw that morning. These photographs are in evidence. Mrs. Parkhill was unable to identify the defendant. At the time of trial, Bill Parkhill made a courtroom identification of the defendant Camel as the one who had been in the car on the morning in question. Upon cross examination, he conceded that he was not absolutely one hundred per cent certain of his identification.

Dr. Kelso, the family physician to whom Miss Hinton was taken for examination, testified that vaginal smears taken from Miss Hinton indicated the presence of sperm. He further testified that on the occasion

of his examination of Miss Hinton she was extremely upset and nervous and that she related to him that she had been raped.

Victoria Booth, defendant's girl friend, testified as an alibi witness to the effect that the defendant spent the night of March 16, 1970 in her apartment and that he did not leave her apartment on the morning of March 17 until after 8:30 A.M. and that he did not use her automobile described as a forest green automobile.

Other evidentiary matter so far as is relevant to the decision in this case will be discussed in connection with the particular issue to which it has application.

The defendant sought, and for the most part obtained, extensive pretrial discovery. He sought but did not obtain the photographs shown to the victim nor was he furnished any detail with reference to the closed-circuit television viewing for purposes of attempted identification. This asserted denial of discovery is claimed as error.

■■ While the prosecution is required to furnish the defendant with all items of evidence or information that would tend to exculpate the defendant or provide mitigating factors for use in his defense, such requirement has no application to the evidentiary items, discovery of which was denied. The discovery requirement applicable at the time of this trial and pretrial proceedings would be those found in the cases of *People v. Moses*, 11 Ill.2d 84, 142 N.E.2d 1; *People v. Wolff*, 19 Ill.2d 318, 167 N.E.2d 197, and, of course, *Brady v. Maryland*, 373 U.S. 83, 10 L.Ed.2d 215. Although this case was tried before the adoption of the present rules of discovery for criminal trials, it is not established that there would be non-compliance with the requirements of these rules. This record does not show nor suggest that favorable evidence was denied the defendant. Further, the denial of the photographs, even if obtainable, cannot be said to be reversible error inasmuch as the in-court identification clearly had an origin independent of any attempted photographic identification. See *People v. Newbury*, 53 Ill.2d 228, 290 N.E.2d 592.

■■ The defendant urges that the identification at the May 28, 1970 preliminary hearing was a pretrial show-up conducted in the absence of counsel and that under the decisions of *United States v. Wade*, 388 U.S. 218, 18 L.Ed.2d 1149; *Gilbert v. California*, 388 U.S. 263, 18 L.Ed.2d 1178; *Coleman v. Alabama*, 399 U.S. 1, 26 L.Ed.2d 387; and *People v. Adams*, 46 Ill.2d 200, 263 N.E.2d 490, aff'd 405 U.S. 278, 31 L.Ed.2d 202, the trial court was in error in its ruling on the motion to suppress and to dismiss the prosecution. The confrontation at the preliminary hearing is not established as a show-up. The record negates the existence of a planned encounter. Furthermore, at the preliminary hearing the defen-

dant had counsel and counsel had sought and obtained a continuance of that hearing on a prior occasion. Indeed, the record indicates that the preliminary hearing was held at a time sought by defendant through his counsel.

The chronology of events becomes relevant. The offense here involved was March 17, 1970. A complaint charging the defendant with the offense was filed May 4, 1970. The preliminary hearing was May 28, 1970. The date of the indictment was June 25, 1970. In *People v. Palmer*, 41 Ill.2d 571, 244 N.E.2d 173, the Illinois Supreme Court held that the requirements of *Wade* and *Gilbert* do not apply to preindictment lineups. However, after the decision in *Kirby v. Illinois*, 406 U.S. 682, 32 L.Ed.2d 411, and in compliance with that decision, the holding in *Palmer* was modified and broadened to apply the *Wade-Gilbert* rule to lineups conducted after the initiation of adversary judicial proceedings. *People v. Burbank*, 53 Ill.2d 261, 291 N.E.2d 161; *People v. Pierce*, 53 Ill.2d 130, 290 N.E.2d 256.

Thus, the protective and exclusionary rule of *Wade* and *Gilbert* would be applicable here if the identification involved were based upon a show-up at the time of the preliminary hearing and the at-trial identification was dependent upon the identification at the preliminary hearing. However, there was no photographic identification, nor a show-up in the sense of a presentation of the suspect alone to the victim for purposes of identification. Thus, that which *Wade* and *Gilbert* is designed to protect against does not appear here.

■■ The in-court identification by the victim and by the witness Parkhill in our judgment was properly received. Each witness had an opportunity to observe the offender at or about the time of the offense. Under the circumstances related in this record, the positive identification at trial has the time of the offense as its origin, not the preliminary hearing nor the attempted identification by photographs. See *People v. Pierce; People v. Blumenshine*, 42 Ill.2d 508, 250 N.E.2d 152.

■■ We find no merit in the contention of the defendant that he was improperly denied his right to counsel at the time the photographs were exhibited to Mrs. Parkhill and her son. The defendant was not present and in *People v. Holiday*, 47 Ill.2d 300, 265 N.E.2d 634, the Illinois Supreme Court held that the *Wade-Gilbert* doctrine does not require the presence of defense counsel at photographic identification proceedings where the defendant himself is not present.

■■ The defendant contends that the trial court committed error in evidentiary rulings with reference to the statement by the victim to Dr. Kelso that she had been raped and in allowing Dr. Kelso to state the results of the laboratory tests for the presence of sperm when he had not conducted nor supervised those tests. Even if the defendant is cor-

rect in his assertions of error on these evidentiary rulings, such did not constitute reversible error in view of the clear cumulative nature of such evidence.

■■■ The same observation is true as to the assertion of the defendant that the trial court improperly precluded him from making certain offers of proof designed to demonstrate the incorrectness of the record insofar as it related to the preliminary hearing. The defendant was denied the opportunity to make offers of proof when he attempted to demonstrate various elements of suggestiveness alleged to exist at the time of the preliminary hearing and when he sought to impeach the record as to that which transpired at the preliminary hearing. The defendant sought to introduce testimony of a discussion allegedly held between the defendant and the judge at the preliminary hearing and he did this by offering the testimony of a witness who was present at the preliminary hearing. An objection on the grounds of hearsay was sustained but the court did permit an offer of proof. Thereafter, when the defendant sought to elicit a conversation between the victim and the victim's father at the time of the preliminary hearing, which conversation was said to have been overheard by a witness, Victoria Booth, the court sustained a general objection and rejected the effort by the defendant to make an offer of proof of that conversation. At another point, again at the hearing on the motion to suppress, the victim was called to the stand and was asked certain questions with reference to attempted photographic identifications. Objections to this line of questioning were sustained and defendant's request to make an offer of proof was disallowed. It can be said as a general rule that it is error for the trial court to refuse to permit counsel to make an offer of proof. It must be borne in mind that we are concerned only with the right to offer the proof as distinct from the right to introduce the evidence. We agree with the observations of the supreme court of Wyoming in the case of *Jones v. Clark*, 418 P.2d 792, when the court noted that the right to offer proof is almost absolute, subject only to the court's discretion to reasonably restrict repetitious effort to offer the same or substantially the same type of proof which has been previously offered and its reception denied. The discussion there found with reference to the purpose of making offers of proof is relevant here. (See also 88 C.J.S. Trial, sec. 73, p. 179, and the annotation at 89 A.L.R. 2d 281.) Thus, it was error for the trial court to preclude the defendant's offer of proof. Such error does not require reversal, however, in view of our holding with reference to the independent origin of the in-court identification.

■■ Other evidentiary matters with reference to the existence or nonexistence of a cast and whether it was removable or not removable were essentially matters relating to the credibility and believability of certain

of the witnesses and such issues are properly for the trier of fact. We find no error in the trial court proceedings upon the essential issues and none that would have denied the defendant a fair trial. The judgment of the circuit court of Champaign County is affirmed.

Judgment affirmed.

SIMKINS and SMITH, JJ., concur.