THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GEORGE GAITOR, Defendant-Appellant.

First District (2nd Division)   No. 62597

Opinion filed May 31, 1977.

Richard L. Clayter, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Timothy Quinn, and Maria C. Cabrera, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Defendant, George Gaitor, was charged by indictment with the offense of murder in violation of section 9—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1971, ch. 38, par. 9—1). Upon a bench trial defendant was found to be guilty of the lesser-included offense of voluntary manslaughter. Judgment was entered on the finding and defendant was sentenced to serve a term of confinement of 3-15 years in the Illinois State Penitentiary.

From entry of the judgment of conviction defendant appeals contending (1) that the failure of the prosecution to comply with certain pretrial discovery demands served to deny defendant due process of law; and, (2) that the evidence adduced at trial was insufficient to establish defendant's guilt beyond a reasonable doubt.

A review of such evidence reveals that at approximately 9 a.m. on Monday, July 17, 1972, the body of Dorothy Hall was discovered in the bedroom of her apartment located at 645 W. 62nd Street in Chicago, Illinois. Hall had been severely beaten and her body evidenced numerous and massive bruises and lacerations. The cause of her death was

determined to be asphyxia induced by manual strangulation or the infliction of a blow to her larynx. A section of "bannister rail", approximately two feet in length and bearing a protruding nail, was positioned near Hall's body. The nail bore traces of blood and hair fibers. A bloodstained Bulova men's wristwatch was also recovered from atop a nearby dresser.

The victim's father, Thomas Knight, testified that at approximately 8:30 p.m. on Sunday, July 16, 1972, he observed his daughter approach her apartment in the company of defendant, George Gaitor. The lease to Hall's apartment had been executed by defendant and he occasionally remained at the apartment overnight.

The next morning, at approximately 8:30 o'clock, Knight observed defendant exit the vestibule of the victim's apartment building. Knight approached defendant and stated, "George, I told you to stay away from Dorothy's apartment and to stop beating Dorothy because she's self-supporting and you're not doing anything at all." According to Knight, defendant responded, "Mr. Knight, as long as I live I'll never put my hands on her again." Knight also indicated that he had previously had occasion to reprimand defendant in connection with an assault upon his daughter.

Approximately one-half hour prior to the aforementioned conversation between Knight and defendant, Thomas Williams observed defendant park his automobile in the alley behind the victim's apartment building, walk up the rear stairway, return 3 to 4 minutes later, and drive away.

Several hours later, defendant was arrested in connection with the Hall homicide investigation. Defendant was advised of his constitutional rights and expressed a willingness to discuss the matter with investigating officers.

According to Chicago Police Department Investigator Ray Luth, defendant gave two versions of the events preceding Hall's death. Initially, defendant indicated that he had last seen the victim at 3 a.m. on Sunday, July 16, 1972, when they returned to her home after a date and that he thereafter returned to her home Sunday evening but failed to find her at the apartment. Defendant also stated that he had attempted to return to the apartment on Monday morning but had been unable to secure access inasmuch as he had inadvertently left his apartment keys at a "transmission shop" where he had taken his automobile for repairs. Investigator Luth telephoned the aforementioned shop and was informed that the missing apartment keys had not been left in their custody. Luth informed defendant of this discovery.

Thereafter, during the course of defendant's interrogation, Luth had occasion to observe that defendant's right hand was swollen and that defendant's left wrist was discolored. Defendant indicated that he had injured his right hand while playing softball on Saturday, July 15, 1972. In

connection with the discoloration, defendant was asked if he wore a wristwatch. Defendant responded that he did own a Bulova men's wristwatch but was unable to recall its whereabouts. Luth informed defendant that such a watch had been recovered from Dorothy Hall's apartment.

At this point, according to Luth, defendant "stated that he would like to tell us what really happened." In this regard defendant admitted that he had been at Hall's apartment on Sunday evening; that she was present on that occasion; that he had been drinking quite heavily on that day; that an argument ensued between defendant and Hall on the subject of defendant's drinking habits, and that he became angry and struck Hall on the face causing her to fall to the floor and strike her head upon a heater. Defendant further related that he then lost control, became enraged and continued to beat Hall. Defendant was unable to recall the number of times he struck Hall or whether he had employed the section of bannister rail recovered at the scene. However, defendant stated that when he left the apartment Hall was alive.

Dr. Edward Shalgos, an expert forensic pathologist, testified that he was unable to determine the precise time of the victim's death but indicated that at the time of the autopsy performed on July 17, 1972, Hall had been dead for a few hours. Nor was Dr. Shalgos able to ascertain whether the blows inflicted upon the victim were sufficient to induce unconsciousness. However, Dr. Shalgos indicated that in situations where a temporary manual strangulation effort causes disruption of the laryngeal structures, the victim's death might occur sometime thereafter. In this regard, Dr. Shalgos noted, "that could be five minutes, that could be a matter of a couple of hours, and I have seen cases where it happened the following day." Dr. Shalgos was unable to determine which time frame was applicable to the instant case.

Defendant testified in his own behalf and indicated that on Sunday, July 16, 1972, he arrived at the victim's apartment at approximately 5:30 p.m. and discovered a note informing defendant that she was at a party with her father. Defendant left the apartment and joined a party at the home of Cornell Lowe.

Defendant testified that he returned to Hall's apartment again at 7:45 p.m.; that he and Hall argued; that he pushed her several times causing her to fall to the floor; and, that he "slapped her a couple of times across the mouth" causing her lip to become bloodied. Defendant, however, stated that Hall was alive when he thereafter left the apartment at 8:30 p.m. and rejoined the Lowe party. Defendant also reiterated his earlier statement that he returned to Hall's apartment on Monday morning but was unable to enter because his keys had been left in the repair shop. Defendant admitted that he had left his watch in the victim's apartment

and elaborated that he could not wind it due to an injury to his hand inflicted on Saturday during the course of a softball game. Defendant denied beating Hall with a bannister rail.

Defendant also adduced the testimony of Leonard McCullum who testified that he observed Dorothy Hall alive and in the company of an unidentified male at a lounge entitled the Club Malibu at midnight on Sunday, July 16, 1972.

The testimony of numerous other witnesses was elicited to corroborate defendant's description of his activities on Saturday and Sunday, July 15 and 16, 1972. Defendant's brother, James Gaitor, testified that defendant had, indeed, injured his hand while playing softball on Saturday afternoon. Several members of defendant's family testified that defendant participated in a family picnic on Sunday morning but did not use his swollen right hand. Cornell Lowe and Robert Johnson indicated that defendant was periodically at Lowe's party on Sunday evening.

Defendant's wife, Flora Gaitor, testified that on Sunday her husband left home at 5 p.m. and did not return until midnight. She also indicated that defendant next left his home at approximately 7:45 a.m. on Monday, July 17, 1972.

In rebuttal, the State presented the testimony of Robert Barcelona, a service manager of the transmission repair shop to which defendant brought his automobile on July 17, 1972. Barcelona indicated that defendant left only the keys to the automobile at the shop. In surrebuttal, Flora Gaitor testified that on July 17, 1972, defendant had occasion to inform her that he had left his keys at the repair shop.

Defendant initially contends that the failure of the prosecution to comply with certain pretrial discovery demands served to deny defendant a fair trial. Within this context, defendant maintains that the prosecution suppressed evidence in two respects.

First, defendant asserts that the prosecution failed to permit defendant to inspect a written statement allegedly made by Thomas Knight shortly after discovery of the victim's body. Defendant speculates that the subject matter of this statement concerned Hall's altercation with defendant on the night of July 16, 1972.

■■ In order to invoke the constitutional right to production of witnesses' prior statements from police reports for impeachment purposes, proper preliminary foundation must be established showing the existence of such statements. (*People v. Galvin* (1970), 49 Ill. 2d 37, 273 N.E.2d 356.) Moreover, such statements must be shown to be in the witnesses' own words or substantially verbatim. (*People v. Durso* (1968), 40 Ill. 2d 242, 239 N.E.2d 842.) Careful examination of the record in the case at bar fails to establish a foundation for the existence of the statement allegedly suppressed. To the contrary, the records support the

proposition that the prosecution made available to defendant a list of witnesses, which list included the name of Thomas Knight, and permitted defendant to inspect all police reports and statements relevant to the instant case in compliance with the mandate of Supreme Court Rule 412 (Ill. Rev. Stat. 1973, ch. 110A, par. 412).

Secondly, defendant maintains that the prosecution deliberately or inadvertently destroyed certain sheets and bathrobes discovered at the scene of the crime. At the inquest and preliminary hearing held in connection with the case at bar, Chicago Police Officer Daniel Fitzgerald testified that certain sheets and bloodstained robes had been inventoried by the Chicago Crime Laboratory. Subsequently, at a hearing on defendant's motion to dismiss the indictment for failure to comply with the pretrial discovery orders, Fitzgerald admitted that his testimony in this regard had been erroneous. Fitzgerald indicated that he had reexamined his reports and discovered that the sheets and robes had not been inventoried. Officer Ray Luth corroborated this testimony. Luth indicated at trial that he observed two bloodstained robes in the bathtub of the victim's apartment but, although he and Luth remained at the scene for 10 to 15 minutes, neither had occasion to inventory the robes. The janitor of the apartment building, Remus Jenkins, testified that he incinerated several sheets which were left in the apartment upon completion of the police investigation.

■■ It cannot be questioned that the suppression of evidence favorable to an accused upon proper request violates the accused's right to due process of law where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. (*Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194.) However, where neither the prosecution nor its agents are in possession of such evidence, the prosecution may hardly be accused of suppressing it. *People v. Rosenborgh* (1974), 21 Ill. App. 3d 676, 315 N.E.2d 545; *People v. Steptoe* (1976), 35 Ill. App. 3d 1075, 343 N.E.2d 1.

■■ In the instant case, the evidence in question was not introduced at trial. There is no indication of record that either the prosecution or the Chicago Police Department were in possession of the sheets or bathrobes. Nor is there any reason to believe that the prosecution purposefully concealed such evidence or, indeed, that the evidence was lost due to the negligence of the Chicago Police Department.

● 4 Moreover, when the evidence in question is considered within the context of the entire case it cannot be maintained that the failure to produce such evidence mandates reversal of defendant's conviction. (See *People v. Jones*, 66 Ill. 2d 152, 361 N.E.2d 1104. Defendant indulges in the speculation that the robes discovered in the bathroom of the victim's apartment bore bloodstains of a type other than that of the victim or

defendant; that laboratory analysis would detect these differentiations; that such bloodstains, of necessity, would have been received during the course of the victim's murder and would have been deposited by the victim's assailant; and, that such evidence would serve to create a reasonable doubt of defendant's guilt not otherwise present in the record. In light of the fact that no evidence was presented, either by in-court testimony or in the summarization of laboratory analyses introduced into evidence, suggesting the presence in the apartment of bloodstains of a type other than that of the victim, defendant's current speculation is groundless. The trial court was fully aware of the State's failure to produce the evidence in question and defendant was in no way precluded from arguing to the trial court any inference which may be said to arise from this fact. Defendant chose not to do so and cannot now be heard to complain in this regard.

■■ Nor can it be doubted that the evidence adduced at trial was sufficient to establish defendant's guilt beyond a reasonable doubt. The evidence presented by the State served to establish defendant's several assaults upon the victim, his means of access to her apartment and his presence at the scene at times relevant to the crime charged in the indictment. Further, defendant's various admissions that he engaged in a heated argument with and subsequently beat Dorothy Hall during a fit of rage fueled by alcohol serves to establish defendant's guilt beyond all reasonable doubt.

For the aforementioned reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

DOWNING, P. J., and PERLIN, J., concur.