THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STONNIE GREEN, Defendant-Appellant.

Third District   No. 76-355

Opinion filed September 27, 1977.

James I. Marcus, of Chicago (Lynn Sara Frackman, of State Appellate Defender's Office, of counsel), for appellant.

Edward Petka, State's Attorney, of Joliet, for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

Defendant, Stonnie Green, was charged by information with two counts, one of unlawful possession of a controlled substance (heroin) and one of unlawful possession of cannabis. Defendant was found guilty after a jury trial and was sentenced to concurrent terms of three years probation with the first six months to be served in the Will County Jail for each conviction.

The testimony preserved in the record reveals that about noon on

October 13, 1975, the defendant was stopped in his automobile by a Joliet police officer three blocks from Green's residence. A pat-down search was performed on defendant Green and the two passengers in his car. Ultimately Green was placed under arrest and placed in a squad car. His own car was parked by one of the police officers who retained the ignition and other keys on the key ring. Green was then driven the three blocks to his apartment at 315 East Cass Street, Joliet. The supervising police officer, Keith Kostelny, attempted to open the front door with two of the eight keys on Green's key ring but failed to get the door unlocked. Acting pursuant to a valid search warrant for Green's apartment, several other officers proceeded to the second floor rear of the building by way of the fire escape. Thereupon the officers entered a rear apartment in the building by kicking in the door. The rear apartment was allegedly broken into to gain access to a hallway leading to Green's apartment with entry ultimately gained by kicking down the door to Green's apartment. Before both forcible entries, the testimony indicated an announcement of the policemen's office and that they had a search warrant was made. The rear apartment which was first entered belonged to Lorean Saltmarch who testified that her apartment had been messed up. Defendant's four-room apartment was subjected to a five-hour search by several narcotics squad officers who uncovered the contraband cannabis. Green was brought from the squad car up to his apartment where he remained during the extensive search. According to defendant's testimony, he was subject to a strip search and body cavity search while he was in the apartment. He testified that each article of his clothing including his shoes and socks were individually examined. The search uncovered nothing. While two police officers admitted that a strip search of defendant was conducted, neither officer personally observed or participated in the search.

Following the search of the apartment, Green indicated he was taken to the Will County Jail where another extensive pat-down search and two strip searches were conducted which uncovered no contraband on defendant's person. During the final strip search conducted in the jail the police recovered three tin-foil packets which allegedly contained the contraband heroin, two of which were lying on the floor nearby defendant. Green, however, denied that the tin-foil packets had ever been on his person. The police indicated only one prior strip search occurred prior to discovering the heroin, and it was further unresolved whether defendant's socks were turned inside out during the strip searches. After the last search the officer handed the socks to defendant and he noticed two tin-foil packets lying on the floor next to the chair where Green was sitting as defendant attempted to put the socks back on. Upon further examination of one of the socks, the police retrieved another packet from a hole in one of the socks. According to the sheriff's deputy, Green

reportedly stated, "You aren't going to charge me with this, are you, I am in enough trouble already." Green, however, testified that his statement to the sheriff had actually been, "Jesus Christ man, I said y'all ain't going to do this to me, I said I am in enough trouble as it is." His version of the statement was allowed but he was prohibited from explaining what his statement meant because the explanation was self-serving. Defendant's objection to a jury instruction on the weight to be given his putative admission on grounds that he made no admission was overruled by the trial court.

On appeal defendant raises four issues:

(1) Whether the trial court erred in denying defendant's motion to suppress the cannabis seized pursuant to a search warrant because the warrant was executed with unreasonable and unnecessary force;

(2) Whether the State's evidence to support the charge of possession of heroin was too inherently incredible to sustain a guilty verdict;

(3) Whether the trial court committed prejudicial error in allowing the State's instruction relating to defendant's putative admission;

(4) Whether reversal on any of the grounds set forth in the appeal on any one charge still requires a reversal and new trial on the remaining charge.

The last issue presented for review need not be decided in light of our general affirmance of defendant's convictions on both charges.

■■ Defendant's first contention is that the police used unnecessary and unreasonable force in executing the search warrant and for that reason the cannabis seized from his apartment should have been suppressed. Defendant's first complaint of police conduct in executing the search warrant is that he was somehow aggrieved by the forcible entry of the police into the rear apartment of Lorean Saltmarch to gain entry to Green's apartment. The defendant has completely failed to establish that he had any standing to object to the entry into the Saltmarch apartment. Without standing defendant could not establish how his rights were violated by the entry into someone else's apartment where he neither lived nor had any proprietary interest. *People v. McNeil* (1972), 53 Ill. 2d 187, 290 N.E.2d 602.

■■ Defendant also asserts that the police used unnecessary and unlawful force in executing the search warrant upon his apartment when they already had defendant in custody and the keys to peacefully unlock the door. Although the forcible entry to Green's apartment was made by breaking down his door, the State's witnesses testified that they announced their office and "no one opened the door" so they forced it open. The argument is now made that the police could have made a

peaceful and expeditious entry without forcing down the door with defendant's keys which were in the officers' possession. The record reflects that an attempt was first made to use the keys to open the front door but the attempt failed and only then was the forcible entry made. Defendant cites *People v. Polito* (1st Dist. 1976), 42 Ill. App. 3d 372, 355 N.E.2d 725; *People v. Richard* (2d Dist. 1975), 34 Ill. App. 3d 621, 339 N.E.2d 400; and *People v. Stephens* (1st Dist. 1974), 18 Ill. App. 3d 817, 310 N.E.2d 755, for the proposition that an unannounced forcible entry to execute a search warrant is unlawful absent exigent circumstances. The Illinois statute concerning entry to execute a search warrant provides that police officers may use all "necessary and reasonable" force to effect entry. (Ill. Rev. Stat. 1975, ch. 38, par. 108—8.) Although the Illinois statute neither condones nor prohibits forcible entries in the absence of prior announcement of authority and purpose, current case law suggests that such announcements are constitutionally required in the absence of exigent circumstances. (*Ker v. California* (1963), 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623; *People v. Stephens* (1st Dist. 1974), 18 Ill. App. 3d 817, 310 N.E.2d 755.) The record here, contains police testimony that an announcement of their office and purpose was made by the police both before the forcible entry to the Saltmarch apartment and the Green apartment. Where evidence is presented that the appropriate announcements were made by the police before they broke down the door, no exigent circumstances need be shown to uphold the forcible entry. There appear to be two important reasons for requiring police announcement of their purpose and office prior to a forcible entry and they are: (1) the possibility of mistake as to location of the premises to be searched as described in the search warrant, and (2) the inherent danger to both the occupants of the premises and the police when a forcible unannounced entry is made. Even though the evidence supports the conclusion that a proper announcement was made in the instant case, there was no apparent problem with regard to the location of the premises to be searched as those of Stonnie Green, and because Green and his companions were already in police custody the risk of harm to occupants and police from a forcible entry into Green's apartment was substantially reduced. The force used in this case is regrettable in light of the police possession of the defendant's keys which would have unlocked the door. However, under the particular circumstances, dealing with contraband narcotics, time becomes a critical factor due to ease of destruction and concealment of the evidence of the crime, possibly by other occupants. The attempt to gain admittance peacefully with keys and the evidence of the police announcement of their purpose and office are sufficient to rebut defendant's theory that the cannabis seized should

have been suppressed because of allegedly unnecessary and unreasonable use of force to gain entry to execute the search warrant.

■■ With regard to this same contention defendant additionally claims the prolonged search of his apartment and his person, which lasted several hours at the least, is cause for the cannabis discovered to be suppressed. He also insists that the body cavity and strip search to which he was subjected was unlawful in the absence of the presence of medical personnel. No authority is cited to support either the latter two propositions. There was no showing that the comprehensive apartment search or the strip and body cavity searches were abusive or conducted in bad faith by the officers. Under these circumstances we find no error in the trial court's refusal to suppress the cannabis which the search uncovered for the reasons advanced by the defendant.

■■ Defendant argues as his second theory on appeal that the police testimony concerning the three packets of heroin found during the last strip search at the jail is so inherently improbable and unbelievable that his conviction for the heroin charge should be reversed. Several strip searches and body cavity searches were performed on defendant. Additionally several pat-down searches were conducted. None of these revealed the heroin. Only the last search at the jail uncovered the contraband. Defendant's testimony attempts to raise the inference that the police or someone planted the heroin on defendant's person. The police attempted to explain the failure to uncover the heroin earlier by testimony that fewer strip searches were actually conducted. In order to prove possession the State had to establish the knowledge of defendant of the presence of heroin and his exclusive and immediate control over the drug. (*People v. Howard* (4th Dist. 1975), 29 Ill. App. 3d 387, 330 N.E.2d 262.) The issue was one of credibility of witnesses which was properly before the jury. We will not upset their determination unless it is contrary to the manifest weight of the evidence. (*People v. Holt* (1963), 28 Ill. 2d 30, 190 N.E.2d 797.) Our examination of the record reveals that the jury determination of guilt on the charge of possession of heroin is supported by the manifest weight of the evidence.

■■■ The next contention urged by defendant is that the trial court erred in allowing the State's jury instruction on defendant's alleged admission to the police when the tin-foil packets containing the heroin were discovered. The jury was instructed as follows:

"You have before you evidence that the defendant made admissions of facts relating to the crime charged in the indictment.

It is for you to determine whether the defendant made the admissions, and, if so what weight should be given the admissions. In determining the weight to be given an admission, you should

642

consider all of the circumstances under which it was made."
(Illinois Pattern Jury Instruction, Criminal, No. 3.06 (1968).)
If defendant's statement, either the State's version or his own, was an
admission, the giving of the instruction was not erroneous. An admission
has been defined as "a statement by an accused of fact or facts which,
when taken in connection with proof of other facts, may lead to an
inference of guilt of the crime charged, but from which guilt does not
necessarily follow." (*People v. Kurzydlo* (1st Dist. 1974), 23 Ill. App. 3d
791, 795, 320 N.E.2d 80, 84.) The statement of Green squarely falls within
the definition of an admission and in our view the giving of the instruction
was not error. Defendant also complains because he was not allowed to
explain his version of the statement which constituted the admission. The
trial court allowed Green to report his own version of what he said when
the heroin was discovered. The trial court refused to allow defendant to
explain what he meant by his statement because it would be self-serving.
We find no error in the refusing of the explanatory testimony.

We believe no error was committed in the trial of this defendant. For
the reasons stated the judgment of the Circuit Court of Will County is
affirmed.

Judgment affirmed.

STENGEL, P. J., and ALLOY, J., concur.