THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ADOLPHUS MOLSBY, Defendant-Appellant.

First District (5th Division)　No. 62648

Opinion filed November 17, 1978.

George C. Howard, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Linda Dale Woloshin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

After a jury trial, defendant, a Chicago police officer, was convicted of possession of a controlled substance and of cannabis and was sentenced to serve concurrent terms of 1 to 3 years and 6 months in the penitentiary. His appeal originally raised 12 separate issues. Three have been stricken on the State's motion for failure to file transcripts of certain pretrial proceedings and a fourth apparently has been incorporated into another of the issues. The remaining issues are whether a verdict of guilty may be sustained: (1) when the trial court has denied the motion of the defense to produce an informer; (2) when the trial judge has refused to allow a search warrant into evidence; (3) when the State has withheld evidence from the defense; (4) when the trial court has refused to allow the defendant to put on evidence regarding his character; (5) where the prosecution has demeaned the character of a defense witness; (6) when the trial court has limited the defense in putting on evidence; (7) where based on allegedly false and perjured testimony; and (8) when the trial court has refused to offer certain instructions of the defense. We affirm.

### State's Case

The evidence for the State indicates that on the night of February 2, 1972, several members of the "D" squad, a special group of law enforcement officers formed to seek out Chicago police officers engaged in illegal narcotics trafficking, went to 7150 South Cyril to execute a search warrant on the person of John Finley, a known narcotics user and dealer, and on his apartment. The search warrant had been issued on the basis of information provided by an informer. The informer had told Special Agent Charles McKissack of the Illinois Bureau of Investigation (IBI) that he had purchased heroin from Finley in his apartment. Several officers testified that they had information that a police officer by the name of Adolph also was present at the time of the sale. However, his name was not mentioned in the search warrant. Officer Floyd Turner testified that this information was not mentioned in the search warrant because the "D" squad was a confidential unit and they did not want to reveal anything until the officer was apprehended.

At approximately 8:40 p.m. on the evening in question, the informer apparently told several of the officers that Finley and Adolph were selling drugs in Finley's apartment. At 8:45 p.m., Agents McKissack and Coleman of the IBI, Sergeants Turner, Mosely, and Williams of the Chicago Police Department's Internal Affairs Division, Assistant State's Attorney Louis Bianchi, and others entered the building at 7150 South Cyril. They proceeded to Finley's apartment to conduct the search. Upon

entering, the officers saw three children "huddled up" next to two women in the living room. Neither Finley nor Adolph was present.

During the search, Turner had left the apartment to check a vehicle parked outside the building. On his return, he saw defendant and Finley entering the building. The three of them took the elevator to the 5th floor. When Finley got off, one of the officers said, "There is Finley." Defendant then left the elevator and went in the opposite direction through a door and down a staircase. Turner followed defendant and, after announcing that he was a police officer, ordered him back up the stairs. When defendant returned, Coleman came over to give assistance to Turner. Defendant told Turner that he was a police officer and that his name was Adolphus Molsby. Turner then said, "Aw, Adolph", or "Adolphus." He said that he was familiar with the name "Adolph" because of information previously provided by the informer. On cross-examination, he stated that he had told the grand jury that the officer was known as Adolphus Molsby.

After giving his name, defendant asked if he could get "a break." Turner then took two bags containing food from him and removed his service revolver. Defendant again asked for "a break." Turner then searched defendant's pockets and found a small tinfoil packet and a coin-type manila envelope containing marijuana. After this was discovered, defendant once again asked for "a break." He was placed under arrest.

Turner and Coleman then took defendant into the washroom of Finley's apartment to conduct a more thorough search. Mosely also was present during this search. While removing his coat, defendant reached into the inside pocket. Turner ordered him to remove his hand and when he did, Turner reached in and discovered a small tinfoil packet of heroin in the pocket. Upon his further search, Turner discovered a pipe containing a residue of marijuana and a vial containing traces of cocaine in defendant's coat and a matchbook containing a marijuana cigarette in defendant's pants. Defendant continued to ask for "a break" throughout the search. At one point, Mosely told him to talk to Bianchi, but defendant did not respond to this suggestion.

At the completion of the search, defendant told Turner that the coat did not belong to him. He said that he had just "grabbed" it from a pile of clothes that were on the bed, and that he had put his own coat in the bedroom closet. Turner testified that both the coat and pants seemed to fit defendant. Nevertheless, the officers searched the bedroom closet, but they did not find any men's clothing. Defendant then said that his coat was in the closet by the bathroom. The officers searched that closet, but they did not find defendant's coat. Turner then told defendant to tell them the truth. Defendant stated that he worked as a security guard at a school

and had taken the drugs from some students. He said that he had simply neglected to inventory the drugs.

Later that evening, Turner left the apartment with defendant. Before returning to the "D" squad's headquarters, he stopped to search defendant's car. He found nothing unusual in the car. On cross-examination, he stated that he found some clothing in the trunk of the car.

### Defendant's Case

The evidence for the defense indicates that at either 7 or 8 p.m. on February 2, 1972, defendant arrived at Finley's apartment with his girl friend, Andrea Scott, and her child. When they arrived they noticed several moving boxes and many items of clothing piled on the bed. Finley, defendant's brother-in-law, asked defendant to help him move his belongings to his mother's house. Defendant agreed to help, but he said that he did not want to soil the clothes which he was wearing. Finley then offered to let defendant wear some of his clothes. Defendant put on a coat and a pair of pants, and began to take some of the boxes down to his car.

Several witnesses who had seen defendant earlier in the evening were shown a photograph which was taken of defendant after his arrest. They testified that the clothes which he was wearing in the photograph were not the same as the clothes he was wearing when they had seen him. Scott, who had been with defendant throughout the evening, and Finley also testified to the change in clothing.

Defendant testified that after he had changed into Finley's clothing, he took his own clothing and put it into the trunk of his car. He said that he removed his service revolver and star folder from the pants, but he left his wallet and his money in his pants. Finley testified that defendant did not take his clothes down to his car, but that he left them in the apartment. After defendant and Finley had filled defendant's car with boxes, they drove to Finley's mother's house.

After stopping for some food, defendant and Finley returned to the building and they took the elevator up to Finley's apartment. When Finley got off the elevator, defendant heard someone say, "there's Finley, there," and then saw four men jump out with carbines. He said that he immediately froze because he assumed that they were police officers. He then told Turner, who had been on the elevator with him, that he was a police officer. He handed him his star folder.

When Turner found the manila envelope in his pocket, defendant told him that the clothes were not his, that he was only helping his brother-in-law move, and that his clothes were in his car. He testified that he never had any cause to check the pockets of the coat or pants which he was wearing. He said that he did not feel anything bulky in the pockets.

Defendant said that he knew Finley had been previously arrested, but he did not know that he was an addict. Finley testified that he had put some of his drugs in the pockets of some of his clothing in preparation for the move from his apartment. Defendant testified that during this initial search he never asked any of the officers for "a break." Scott testified that she had heard defendant twice ask if he could be of some assistance.

When the officers took defendant into the bathroom, he again said the clothes were not his. He asked to talk to the officer in charge. He then explained to him that his clothes were in his car. Defendant denied ever reaching into the inside coat pocket as Turner had testified. He denied ever telling the police officers that his coat was in the bedroom closet. He also denied saying that he had taken the drugs from students, although he did state that he once worked for the Board of Education in a security capacity.

When the police officers left the apartment, they went to defendant's car. They opened the trunk and found the clothing which defendant claims he was wearing earlier in the evening. Later that evening, Scott opened the trunk and took money from defendant's pants in order to pay his bond. She testified that those were the same pants he was wearing when they arrived at Finley's apartment.

OPINION

The first issue we must consider is whether the trial court erred in denying the defense motion to produce the informer. The informer provided the information which was the basis for the issuance of the search warrant. He also told several police officers that when they executed the search warrant on Finley's apartment they would find Finley and a police officer by the name of Adolph, or Adolphus, dealing in drugs. Defendant contends that the informer should have been produced because his identity was material to the establishment of his defense.

■■ In determining whether to order production of an informer, a court must balance the public interest in protecting a free flow of information against the individual's interest in presenting a defense. (*Roviaro v. United States* (1957), 353 U.S. 53, 62, 1 L. Ed. 2d 639, 646, 77 S. Ct. 623; *People v. Rinaldo* (1976), 34 Ill. App. 3d 999, 1001, 341 N.E.2d 166, 168.) In making this balance, the court must consider all relevant factors, including the crime charged, the possible defenses, and the possible significance of the informer's testimony. *Roviaro*, 353 U.S. 53, 62, 1 L. Ed. 2d 639, 646, 77 S. Ct. 623; *People v. Chaney* (1976), 63 Ill. 2d 216, 225, 347 N.E.2d 138, 143.

In this case, defendant was charged with possession of certain drugs. The drugs were found in clothing which he was wearing. His defense was that he had borrowed the clothes from Finley because he did

not want to soil his own clothes while helping Finley move from his apartment. Finley testified that the clothes did belong to him and that he could have put some of his drugs into the pockets of those clothes.

We fail to see how anything which the informer could have testified to at trial could have had any bearing on the crime charged or on defendant's defense. The informer did not participate in, witness, or set up the crime. (*People v. Chaney* (1976), 63 Ill. 2d 216, 225, 347 N.E.2d 138, 143; *People v. Monroe* (1975), 32 Ill. App. 3d 482, 486, 335 N.E.2d 783, 787.) He merely provided information which led the law enforcement officials to Finley's apartment on February 2, 1972.

■■ The court in *People v. Robinson* (1969), 105 Ill. App. 2d 57, 245 N.E.2d 137, considered the value of an informant's testimony under similar circumstances. In *Robinson,* a police informant had identified defendant as the person who had just sold him drugs. The court rejected defendant's request for the informant's identity, noting that "[t]he offense charged was possession of a narcotic drug and, as the informer was not present when the defendant was searched, the testimony of the informer would have no significant value on the issue of defendant's guilt or innocence." (105 Ill. App. 2d 57, 66, 245 N.E.2d 137, 142.) We also find that the informer's testimony would have no significant value on the issue of defendant's guilt or innocence in this case. Therefore, we hold that the trial court did not err in denying the defense motion to produce the informer.

The next issue we consider is whether the trial court erred in refusing defendant's request that the search warrant be admitted into evidence. Defendant contends that the absence of any reference to him in the warrant contradicts trial testimony of police officers that, prior to the issuance of the warrant, they had information that he was engaged in the illegal sale of drugs. As a result, he states that the search warrant should have been admitted as an impeaching document.

■■ Assuming that the warrant contradicts the officers' trial testimony, we cannot see how its introduction would have added anything to defendant's case. At trial, Officers Turner, Mosely, and Williams, and Assistant State's Attorney Bianchi each testified that there was no reference to defendant in the search warrant. This evidence was sufficient to apprise the jury of the omission of defendant's name in the search warrant. The search warrant only would have been cumulative evidence on this point. The trial court has broad discretion in deciding to accept or reject such evidence. (*Long v. Bennett* (1977), 55 Ill. App. 3d 50, 53, 370 N.E.2d 627, 629; *Ross v. Pfeifer* (1976), 39 Ill. App. 3d 789, 796, 350 N.E.2d 797, 803.) We hold that the trial court did not abuse its discretion in this instance and therefore did not err in refusing defendant's request to admit the search warrant into evidence.

The third issue is whether the State's failure to disclose evidence to

defendant constituted reversible error. The defendant filed pretrial discovery motions requesting the State to produce (1) all tangible evidence which the State intended to use at trial or which was taken from or belonged to the accused, and (2) any material or information within its possession tending to negate the guilt of the accused as to the offense charged. The State filed an answer denying the existence of any such evidence.

At trial, Scott testified that she neither had met Finley nor had visited his apartment prior to the evening of February 2, 1972. On cross-examination, she was shown two photographs of herself, Finley, and defendant together in what was later identified by some witnesses as Finley's apartment and by other witnesses as defendant's sister's apartment. The photographs were taken before February 2, 1972. Defendant strenuously objected to the use of the photographs claiming that the State had deliberately and wilfully withheld them from the defense.

Upon proper request, defendant is entitled to the State's production of photographs if (1) they were obtained from or belong to defendant; (2) the State intends to use them at trial; or (3) they are favorable to the defense. (Ill. Rev. Stat. 1971, ch. 110A, pars. 412(a)(v), 412(c); *People v. Newbury* (1972), 53 Ill. 2d 228, 238, 290 N.E.2d 592, 598.) None of these situations are present here. First, the photographs were not taken from nor did they belong to defendant. The photographs were taken from an album belonging to Finley. Second, the State did not intend to use the photographs at trial. They only used them in an attempt to impeach Scott after she had made statements which were believed to have been untrue. Once used, the State had no objections to defendant's viewing the photographs.

■■ Third, defendant has not indicated to us how these photographs might be favorable to the defense. (*People v. Newbury* (1972), 53 Ill. 2d 228, 238, 290 N.E.2d 592, 598; *People v. Camel* (1973), 10 Ill. App. 3d 1022, 1027, 295 N.E.2d 270, 273.) The photographs only show Scott, Finley, and defendant together in what is arguably Finley's apartment. Perhaps, the presence of Scott in this picture contradicts Scott's testimony that she had never met Finley or visited his apartment prior to February 2, 1972. Perhaps, it shows that defendant had more than a casual relationship with Finley. Yet, it does not in any way negate the guilt of defendant as to the charge of possession of drugs. Therefore, we find that defendant was not entitled to the production of these photographs prior to trial.

Defendant also asserts that the State wilfully withheld the photographs which were taken in Finley's apartment on the night of February 2, 1972. He contends that these photographs would have shown that Finley was in the process of moving from his apartment that night. Although not stated by defendant, the apparent value of such evidence

would have been that it would have lent some support to his contention that he had only changed into the clothing from which the drugs were retrieved in order to help Finley move.

■■ In answer to defendant's contention, we first note that the State cannot be accused of withholding evidence where neither the State nor its agents are in possession of the evidence. (*People v. Gaitor* (1977), 49 Ill. App. 3d 449, 454, 364 N.E.2d 484, 487; *People v. Steptoe* (1976), 35 Ill. App. 3d 1075, 1079, 343 N.E.2d 1, 4.) The State had indicated that they could not produce the photographs because they were not in their possession. An attempt had been made to locate the photographs but it had proven unsuccessful. Also, Officer Coleman, who had taken the photographs, indicated that the "D" squad had been disbanded early in 1973 and that he did not know what had happened to the pictures. The State speculated that the photographs were either misplaced or destroyed when the unit was disbanded.

■■ Additionally, we believe that when the photographs are considered within the context of all the evidence, it cannot be said that the failure to produce the photographs requires the reversal of defendant's conviction. (*People v. Gaitor* (1977), 49 Ill. App. 3d 449, 454, 364 N.E.2d 484, 488.) The jury, of course, was aware of the State's failure to produce the photographs at trial. Defendant argued this very fact to the jury in his closing argument. Nevertheless, despite the inference which the absence of the photographs might create, the jury found defendant guilty. We see no reason to reverse the jury's verdict on this issue and therefore we hold the State's failure to produce the photographs did not constitute reversible error.

■■ We are next asked to consider defendant's claim that the trial court refused to allow him to introduce character evidence. However, we cannot find any such refusal on the record. The record indicates that defendant was permitted to call three character witnesses and each was allowed to testify. There were no other requests to call character witnesses on the record. Since the record is devoid of any evidence supporting defendant's contention, we cannot consider an issue which is not properly before us.

The fifth issue we consider is whether a verdict may be sustained where the State "wilfully and viciously" demeans the character of a defense witness. During its rebuttal, the State called the defendant's sister, Julia Carr, who had earlier testified in defendant's behalf. While questioning her concerning the interior of an apartment depicted in a photograph, the following exchange took place:

"MR. BOLON [Assistant State's Attorney]:

Mrs. Carr, will you tell the ladies and gentlemen of the jury what is depicted on that wall of the wallpaper?

MR. HOWARD [Defense Counsel]: If the court please, I am going to object to this because the witness has not identified the photograph of being something that she had ever seen before. She never seen [sic] the photograph before and therefore I am going to object to any questions being asked of the witness concerning the photograph.

MR. BOLON: She said it's her room.

MR. HOWARD: You can get somebody off the street and say that.

MR. BOLON: That's exactly what you did, Mr. Howard.

MR. HOWARD: I move at this time for a mistrial.

THE COURT: Your motion is denied and the jury is instructed to disregard the last statement that Mr. Bolon made."

■■ A verdict will not be disturbed where the improper remarks of counsel do not constitute a material factor in the conviction. (*People v. Clark* (1972), 52 Ill. 2d 374, 390, 288 N.E.2d 363, 371-72; *People v. Watson* (1977), 47 Ill. App. 3d 665, 670, 365 N.E.2d 95, 99.) Although the Assistant State's Attorney's remark here was clearly improper, it did not constitute a material factor in the conviction. Also, whatever harm may have been caused by the remark was sufficiently limited by the court's immediate instruction that the jury ignore the remark and the court's later instruction that the jury should only consider the testimony of the witness which the court had received. (*People v. Watson* (1977), 47 Ill. App. 3d 665, 671, 365 N.E.2d 95, 99; *People v. Witherspoon* (1975), 33 Ill. App. 3d 12, 23, 337 N.E.2d 454, 462.) Therefore, we find no error requiring a reversal in this instance.

Next we consider defendant's contention that the trial court prevented him from putting on evidence which would meet the State's evidence. On cross-examination, Scott testified that defendant, a married man, was her boy friend. She further testified that his name appeared on the mailbox to her apartment but that he did not live with her. The defense attempted to "rebut" this testimony during the direct examination of defendant. During his testimony, the defense sought to introduce a copy of the lease to Scott's apartment, indicating that defendant had leased it for Scott, and several rent receipts, indicating that Scott had paid the rent for her apartment. The trial court refused their admission.

■■ As a general principle of law, each party is entitled to present evidence which is relevant to its theory of the case. (*In re Application of County Treasurer* (1973), 14 Ill. App. 3d 765, 772, 303 N.E.2d 476, 481.) The test for relevancy is whether the evidence offered tends to prove or

disprove a disputed issue. (*People v. Fair* (1977), 45 Ill. App. 3d 301, 304, 359 N.E.2d 848, 851. See also *Sheraton-Chicago Corp. v. Lewis* (1972), 8 Ill. App. 3d 309, 311, 290 N.E.2d 685, 687.) The issue apparently raised by Scott's testimony is whether defendant lived with her. Evidence that the lease was taken out by defendant for Scott and that the rent payments were made by Scott does not tend to prove or disprove this issue. Therefore, we find that the trial court did not rule incorrectly in refusing to admit the lease and rent receipts into evidence.

Defendant claims that the verdict of guilty should not be sustained because it was based on false and perjured testimony. The specific instances of perjury which he alleges include: (1) the police officers' testimony that they had information concerning the drug involvement of a police officer by the name of Adolph prior to the search despite their failure to either secure a search warrant in his name or to make out any reports concerning this information; (2) the testimony of Finley's landlord that he could describe Finley's apartment even though he could not describe any of the other 200 apartments which he managed; and (3) the testimony of Officer Turner that prior to the arrest of defendant he had not heard the name Adolphus Molsby. We will consider only the last allegation of perjury because, after having reviewed the record, we find that the other allegations are without merit.

Before a grand jury in this case, Officer Turner testified that "information had been received that a person by the name of John was dealing in cocaine and in heroin in apartment 511 at 7150 Cyril Court, and that this person *known as Adolphus Molsby* was a Chicago police officer." (Emphasis added.) At trial, Turner testified that he had information that an officer by the name of Adolph was engaged in the sale of narcotics. Defendant contends that Turner's trial testimony contradicts his earlier testimony and therefore it constitutes perjury.

Mere conflicts in the testimony of a witness with his prior statements do not establish that he has committed perjury. (*People v. Henderson* (1976), 36 Ill. App. 3d 355, 384, 344 N.E.2d 239, 261; *People v. Burnett* (1975), 35 Ill. App. 3d 109, 122, 341 N.E.2d 86, 96.) This is especially true when the conflicts are minor and the testimony was given at different stages of the proceedings. (*People v. Strother* (1972), 53 Ill. 2d 95, 100-01, 290 N.E.2d 201, 204; *People v. Burnett* (1975), 35 Ill. App. 3d 109, 122-23, 341 N.E.2d 86, 96.) We believe that the conflict in Turner's testimony is only minor and is at least partially explainable by the nature of his testimony.

■■ Turner's testimony before the grand jury came after the arrest of defendant. At that time he was aware of defendant's full name. When he testified before the grand jury, he was merely testifying to his present

knowledge of defendant's identity. We believe that his words, "this person known as Adolphus Molsby," indicate that. His testimony at trial was given in the context of the events which transpired on the night of February 2, 1972. He said that when defendant told him that his name was Adolphus Molsby he called him Adolph because he had information that Finley and a police officer by the name of Adolph were dealing in drugs. He was only testifying as to what he knew prior to the arrest, not after it. We hold that as a matter of law, such a conflict in testimony does not constitute perjury.

The last issue in this appeal is whether the trial court's failure to instruct the jury on defendant's theory of the case requires reversal. Normally, a reviewing court will not even consider a review of objections to jury instructions unless the complaining party has provided the court with an abstract of all the instructions. (*People v. Rosa* (1977), 49 Ill. App. 3d 608, 617, 364 N.E.2d 389, 395; *People v. Aprile* (1973), 15 Ill. App. 3d 461, 463, 304 N.E.2d 642, 643-44.) Defendant has not provided us with an abstract in this case. Nevertheless, we have reviewed the transcript of the conference on jury instructions and we will discuss each of defendant's objections.

■■ First, defendant objects to the court's failure to give an instruction on perjury. A defendant is only entitled to an instruction as to the law applicable to any state of facts shown by the evidence. (*People v. Carmack* (1977), 50 Ill. App. 3d 983, 987, 366 N.E.2d 103, 106.) As we have already indicated, there was no evidence of perjury in this case. Therefore, defendant was not entitled to an instruction on perjury.

Second, defendant objects to the court's failure to charge the jury with both paragraphs of the Illinois Pattern Jury Instruction on circumstantial evidence. (Illinois Pattern Jury Instructions, Criminal, No. 3.02 (hereinafter IPI).) IPI Criminal No. 3.02 provides:

> "Circumstantial evidence is the proof of facts or circumstances which give rise to a reasonable inference of other facts which tend to show the guilt or innocence of [the] [a] defendant. Circumstantial evidence should be considered by you together with all the other evidence in the case in arriving at your verdict.
>
> [You should not find the defendant guilty unless the facts and circumstances proved exclude every reasonable theory of innocence.]"

The trial court only charged the jury with the first paragraph.

■■ The committee comments accompanying IPI Criminal No. 3.02 indicate that a jury should only be charged with the second paragraph if all the evidence is circumstantial. (*People v. Hill* (1978), 56 Ill. App. 3d 510, 515, 371 N.E.2d 1257, 1260; *People v. Estes* (1976), 37 Ill. App. 3d 889, 894, 346 N.E.2d 469, 474.) It was not proper to charge the jury in this case

with the second paragraph because all the evidence was not circumstantial. The evidence indicating that defendant possessed drugs was direct evidence. Since there was some direct evidence in this case, the court did not err in refusing to charge the jury on the second paragraph of this instruction.

Third, defendant objects to the court's failure to charge the jury with the IPI instructions on violation of the Narcotics Drug Act. (IPI Criminal Nos. 17.01, 17.02.) The court, instead, charged the jury with non-IPI instructions tendered by the State (People's Instructions 11—14).

■■ Supreme Court Rule 451(a) (Ill. Rev. Stat. 1971, ch. 110A, par. 451(a)) provides:

> "Whenever Illinois Pattern Instructions in Criminal Cases * * * contains an instruction applicable in a criminal case, * * * the IPI-Criminal instruction shall be used, unless the court determines that it does not accurately state the law." (See also *People v. Finley* (1977), 49 Ill. App. 3d 26, 29, 363 N.E.2d 871, 874; *People v. Kent* (1976), 40 Ill. App. 3d 256, 260, 350 N.E.2d 890, 894.)

In this case, defendant's IPI instructions did not accurately state the law. Defendant's instructions referred to a violation of the Uniform Narcotic Drug Act (Ill. Rev. Stat. 1969, ch. 38, pars. 22—1 to 22—49.1). That Act was repealed on August 16, 1971, and was replaced by the Controlled Substances Act (Ill. Rev. Stat. 1971, ch. 56½, par. 1100 *et seq.*). The State's non-IPI instructions incorporated the language of the new Act into a simple and accurate statement of the law. The trial court has the discretion to accept or reject a non-IPI instruction. (*People v. Hines* (1975), 28 Ill. App. 3d 976, 985, 329 N.E.2d 903, 909.) Since we do not feel the trial court abused its discretion in this case, we hold that the trial court did not err in rejecting defendant's IPI instructions.

Fourth, defendant objects to the trial court's refusal to give his non-IPI instruction on "intent to possess." Prior to the trial court's rejection of defendant's instruction, the court had accepted a number of the State's instructions (People's Instructions 11—14) on basically the same principle of law. "It is well established that it is not error to refuse a requested instruction that accurately states a principle of law applicable to a case, if that principle has already been covered accurately and sufficiently by another instruction given." (*People v. Hughes* (1977), 46 Ill. App. 3d 490, 500, 360 N.E.2d 1363, 1369-70. See also *People v. Looney* (1977), 46 Ill. App. 3d 404, 411, 361 N.E.2d 18, 23.) Since the trial court had already accepted a number of instructions on the same principle of law, the court did not err in rejecting defendant's non-IPI instruction.

■■ ■ Lastly, defendant objects to the trial court's acceptance of the State's IPI instruction on motive. (IPI Criminal No. 3.04.) IPI Criminal No. 3.04 provides:

"Motive is that which prompts a person to act. The State is not required to prove a motive for the commission of the crime charged."

An instruction on motive is not improper when motive is not an essential element of a crime. (*People v. Hobbs* (1966), 35 Ill. 2d 263, 269, 220 N.E.2d 469, 472.) Motive is not an element of the crime of unlawful possession of drugs. One must only prove knowledge and possession. (*People v. Green* (1977), 52 Ill. App. 3d 636, 641, 367 N.E.2d 1061, 1065.) Since motive is not an element of the crime of unlawful possession of drugs, the trial court did not err in accepting the State's instruction on motive.

For the foregoing reasons, we affirm the trial court's decision in this case.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.