David L. BOWLING

v.

The UNITED STATES.

No. 679–81C.

United States Claims Court.

Nov. 19, 1982.

As Amended Dec. 3, 1982.

**56**

Gary D. Jackson, Dallas, Tex., atty. of record, for plaintiff; Jackson & Jackson, Dallas, Tex., of counsel.

Lynn Bush Ferguson, Washington, D.C., with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., for defendant; Stephen A.J. Eisenberg, Lt. Col., JAGC, Dept. of the Army, Washington, D.C., of counsel.

### ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

### OPINION

WHITE, Judge.

The plaintiff, a former Specialist Four (E–4) in the Army, was discharged with a bad-conduct discharge pursuant to a conviction and sentence by a special court-martial. He asks this court to vacate his conviction and sentence, to order his reinstatement to his previous rank of Specialist Four in the Army, and to make an award of back pay to him.

As the parties are in agreement concerning the facts essential to the disposition of the case, they have filed cross-motions for summary judgment.

Having considered the briefs of the parties and heard oral argument, it is concluded that, in view of the rather narrow scope of the review which civil courts are empowered to exercise over the judgments of courts-martial, this court cannot properly grant the relief which the plaintiff seeks.

■ Judgments by courts-martial are not subject to direct review by federal civil courts. Collateral review of such judgments, however, has long been available under certain circumstances. A commonly used method of obtaining collateral review has been the filing of actions for back pay with this court's predecessor, the United States Court of Claims. *See, e.g., Gallagher v. United States,* 191 Ct.Cl. 546, 423 F.2d 1371, *cert. denied,* 400 U.S. 849, 91 S.Ct. 58, 27 L.Ed.2d 86 (1970); *McDonald v. United States,* 205 Ct.Cl. 780, 507 F.2d 1271 (1974).

In this connection, it should be mentioned that Article 76 of the Uniform Code of Military Justice (10 U.S.C. § 876) expressly states that "all dismissals and discharges carried into execution under sentences by courts-martial following approval, review, or affirmation as required by this chapter, are final and conclusive. * * * " The Supreme Court, however, held in *Schlesinger v. Councilman,* 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975), that Article 76 does not bar a federal civil court, in an action otherwise within its subject-matter jurisdiction, from considering a collateral attack on a court-martial judgment which raises a question as to whether such judgment is void on constitutional grounds. Hence, as the Court of Claims said in *Augenblick v. United States,* 180 Ct.Cl. 131, 143, 377 F.2d 586, 593 (1967), *rev'd on other grounds,* 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969), Article 76 did not make decisions by courts-martial "truly final."

■ In the present case, the plaintiff having filed an action within this court's subject-matter jurisdiction, and having based the action on allegations to the effect that his court-martial conviction and sentence were void on constitutional grounds, the court has jurisdiction to consider and dispose of the collateral attack thus presented.

In exercising the power of collateral review over court-martial judgments, federal civil courts have experienced considerable difficulty in determining the proper scope of such review. In *Burns v. Wilson,* 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953), the Supreme Court indicated that federal civil courts should confine their review to a

determination of whether, in a particular instance, the court-martial acted within its personal and subject-matter jurisdiction and whether it gave "fair consideration" (*id.* at 144, 73 S.Ct. at 1050) to allegations of constitutional error.

In applying the "fair consideration" test, some appellate courts have held that the review of a court-martial judgment on a collateral attack should end once it is determined that the military courts heard and considered the claims of constitutional error made by the accused in the court-martial proceedings. *See, e.g., Easley v. Hunter,* 209 F.2d 483, 487 (10th Cir.1953); *Sunday v. Madigan,* 301 F.2d 871, 873 (9th Cir.1962). More recent appellate decisions, however, have tended to apply the "fair consideration" test only to the factual findings of courts-martial. Under this fact/law distinction, civil courts have concluded that they may independently decide questions of constitutional law raised in a collateral attack on a court-martial judgment, irrespective of whether such legal questions were considered by the military courts. *See, e.g., Shaw v. United States,* 174 Ct.Cl. 899, 904–05, 357 F.2d 949, 954 (1966); *Kennedy v. Commandant,* 377 F.2d 339, 342 (10th Cir. 1967); *Harris v. Ciconne,* 417 F.2d 479, 481 (8th Cir.1969), *cert. denied,* 397 U.S. 1078, 90 S.Ct. 1528, 25 L.Ed.2d 813 (1970).

It appears that the Court of Claims adopted the fact/law distinction in considering the constitutional claims of individuals challenging court-martial judgments. In *Shaw v. United States, supra,* the court stated that it could review "pure issues of constitutional law, unentangled with an appraisal of a special set of facts" (174 Ct.Cl. at 905, 357 F.2d at 954; *see also Augenblick v. United States, supra,* 180 Ct.Cl. at 143–44, 377 F.2d at 593). On the other hand, the Court of Claims said that questions of fact resolved by the military courts could not be collaterally attacked. *See, e.g., Flute v. United States,* 210 Ct.Cl. 34, 38, 535 F.2d 624, 626 (1976) ("[t]his court does not have the authority to retry the facts of a court-martial proceeding nor to act as a reviewing court of the decisions of the court-martial tribunal"); *Taylor v. United States,* 199 Ct.Cl. 171, 174 (1972) ("[t]his court will not reweigh the evidence presented at plaintiff's court-martial in order that it might substitute its judgment for that of the military trial court"); *Artis v. United States,* 205 Ct.Cl. 732, 740, 506 F.2d 1387, 1391 (1974) ("we have no authority to retry the facts of a court-martial proceeding").

Moreover, the Court of Claims said that, even in matters of constitutional law, the military courts "must be allowed a reasonable scope for the exercise of judgment" in determining "how much is necessary to be done to effectuate a constitutional right they are aware of and manifestly respect." *Flute v. United States, supra,* 210 Ct.Cl. at 39, 535 F.2d at 627.

Decisions by the Supreme Court subsequent to the *Burns* decision have not ended the confusion surrounding the scope of review by federal civil courts of court-martial judgments. It is certain, however, that the civil courts can properly review only claims rising to the "constitutional level." *United States v. Augenblick,* 393 U.S. 348, 351–52, 89 S.Ct. 528, 531, 21 L.Ed.2d 537 (1969). In *Augenblick,* the Court described the constitutional level in terms difficult for a plaintiff to establish:

> * * * [A]part from trials conducted in violation of express constitutional mandates, a constitutionally unfair trial takes place only where the barriers and safeguards are so relaxed or forgotten * * * that the proceeding is more a spectacle * * * or trial by ordeal * * * than a disciplined contest. [393 U.S. at 356, 89 S.Ct. at 534 citations omitted.]

The Court's most recent discussion of the scope of review was in *Schlesinger v. Councilman, supra,* where the Court stated that a court-martial judgment could be collaterally attacked only for "lack of jurisdiction or some other equally fundamental defect" (420 U.S. at 747, 95 S.Ct. at 1307). The Court further said that the determination of whether a court-martial judgment is void depends "on the nature of the alleged defect, and the gravity of the harm from which relief is sought," and that these fac-

tors "must be assessed in light of the deference that should be accorded the judgments of the carefully designed military justice system established by Congress" (*id.* at 753, 95 S.Ct. at 1310).

The petition in the present case states that the plaintiff relies on the same alleged errors which were complained of in an attached "Assignment of Errors and Brief on Behalf of Appellant by Civilian Co-Counsel," which was filed with the United States Court of Military Appeals in the court-martial proceedings. (The same attorney who was the plaintiff's civilian co-counsel in the court-martial proceedings represents the plaintiff in the present judicial proceedings.) These assignments of error will be discussed in the light of the court precedents mentioned earlier in the opinion.

## I

The assignment of errors which the plaintiff's civilian co-counsel filed with the United States Court of Military Appeals listed, as one of the principal points of error, that "The military judge erred by failing to grant the motion to suppress because the officer authorizing the search was incapable in fact of acting in an impartial capacity."

The agreed facts show that while the plaintiff was serving in the Army, assigned to Company B, 95th Military Police Battalion, stationed in Heidelberg, Germany, and billeted in Patton Barracks, a Military Police investigator searched the plaintiff's room in Patton Barracks and discovered some hashish in the room; that the search of the plaintiff's room had been authorized by Captain James T. Case, Company Commander of the 529th Military Police Company and Building Commander of Patton Barracks; and that the power to authorize searches had been delegated to Captain Case by Colonel John J. Cassidy, Commanding Officer of Special Troops (including the Military Police) at Heidelberg, who maintained his headquarters in Patton Barracks.

After the discovery and seizure of the hashish, the plaintiff was charged with having violated Article 134 of the Uniform Code of Military Justice (10 U.S.C. § 934)

through the possession of "marihuana." (He was also charged with having violated Article 134 through the transfer of "marihuana," and this charge will be discussed later in the opinion.)

At the beginning of the plaintiff's trial before a special court-martial, the plaintiff's defense counsel made a motion to suppress the evidence which had been seized when the plaintiff's room was searched, contending that the search was illegal. Evidence was submitted on the motion to suppress, and it was argued before the military judge by the defense counsel and the trial counsel (representing the Government). The defense counsel argued that the search was illegal for two reasons: first, that the search was not based on probable cause; and, second, that Captain Case, who authorized the search, could not act as an impartial magistrate, as required by military law, because he was concerned with law enforcement as an officer of the Military Police and because he had previously been approached by the informant in the plaintiff's case. It is the second reason with which the court is concerned in this part of the discussion.

At the conclusion of the oral argument, the military judge denied the motion to suppress, without stating his reasons for the action.

The plaintiff was convicted by the special court-martial of the charges against him, and was sentenced to a bad-conduct discharge, forfeiture of $217 pay per month for 5 months, confinement at hard labor for 5 months, and reduction to the grade of Private (E-1). The findings and sentence of the court-martial were reviewed and approved by the Commanding General of the 1st Support Brigade and by the Judge Advocate General of the Army. The plaintiff's case was then submitted to the Army Court of Military Review.

In the proceedings before the Army Court of Military Review, the plaintiff's military defense counsel and his civilian co-counsel both argued (among other things) in their briefs that the motion to suppress

should have been granted by the military judge at the court-martial trial because the officer (Captain Case) who authorized the search of the plaintiff's room was incapable of acting as an impartial magistrate.

In disposing of the case, the Army Court of Military Review, using a printed form, merely stated that it affirmed the findings of guilty and the sentence, "having found the findings of guilty and sentence as approved by proper authority correct in law and fact and having determined, on the basis of the entire record, that they should be approved * * *."

An appeal was next taken on behalf of the plaintiff to the Court of Military Appeals. The brief on the merits that was submitted to the Court of Military Appeals on behalf of the plaintiff again argued (among other things) that the officer who authorized the search of the plaintiff's room was not capable of acting as an impartial magistrate. In its decision on this point, the Court of Military Appeals held that "the evidence seized from the appellant's barracks room was properly admitted since the officer who authorized the search of the appellant's room was neutral and detached * * *."

■ The well-established rule in both the civil and the military courts is that a search can be authorized only by an impartial magistrate, and not by an "officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948); *see also Coolidge v. New Hampshire,* 403 U.S. 443, 450–53, 91 S.Ct. 2022, 2029–31, 29 L.Ed.2d 564 (1971); *United States v. Drew,* 15 U.S.C.M.A. 449, 453, 35 C.M.R. 421, 425–26 (1965); *United States v. Ness,* 13 U.S.C.M.A. 18, 20 n. 1, 32 C.M.R. 18, 20 n. 1 (1962). In the military courts, the decisions have turned on the extent of participation by an authorizing officer in a particular investigation of the accused. The mere fact that a commanding officer has responsibilities that include law enforcement and maintenance of discipline does not bar him from acting as a neutral and detached magistrate. *United States v.*

*Staggs,* 23 U.S.C.M.A. 111, 114, 48 C.M.R. 672, 675 (1974); *see also United States v. Ezell,* 6 M.J. 307, 318–19 (C.M.A.1979). However, if the authorizing officer departs "from his normal role and [becomes] an active participant in gathering evidence against the accused," he necessarily loses his neutrality and detachment. *Staggs, supra,* 23 U.S.C.M.A. at 114. Thus, if the magistrate plans or directs the investigation against the accused, the requisite impartiality is lost. *See, e.g., United States v. Murray,* 12 M.J. 139, 140–41 (1981); *United States v. Cordero,* 11 M.J. 210, 213–14 (C.M.A.1981).

■ A determination as to whether Captain Case was acting impartially in the plaintiff's case was largely a factual inquiry, which the military trial and appellate courts resolved against the plaintiff, after his counsel had been afforded every reasonable opportunity to establish that Captain Case did not act as an impartial magistrate in authorizing the search of the plaintiff's room. Consequently, although the military courts did not articulate their reasoning, it must be concluded that the plaintiff's claim in this respect received "fair consideration" (*Burns v. Wilson, supra,* 346 U.S. at 144, 73 S.Ct. at 1049) from the military courts.

■ Moreover, although it is unnecessary for the court to go further in discussing this particular matter, the undisputed facts in the record support the conclusion that Captain Case, the officer who authorized the search of the plaintiff's room, acted with proper impartiality and did not personally involve himself in the evidence-gathering process that was involved in the plaintiff's case.

The facts show that, several weeks before the plaintiff's room was searched, a Private First Class Bennet approached Captain Case, the Building Commander of Patton Barracks, and indicated that he could provide information on the drug problem in the command. Captain Case referred PFC Bennet to Staff Sergeant James Shelton, the Military Police investigator. Several weeks later, Sgt. Shelton reported to Cap-

tain Case that, according to information received from PFC Bennet, Bennet had seen the plaintiff transfer some hashish to Pvt. John C. Banks in the plaintiff's room, and that PFC Bennet had also seen some hashish in a locker in the plaintiff's room. Sgt. Shelton further stated to Captain Case that PFC Bennet was a reliable informant who had given information leading to disciplinary action in another drug-related case. Based on the information conveyed by Sgt. Shelton, Captain Case authorized a search of the plaintiff's room; and, as previously stated, the search uncovered some hashish in the plaintiff's room.

Thus, Captain Case did not personally plan or participate in any investigation of the plaintiff, but merely performed the judicial function of authorizing a search of the plaintiff's room upon the basis of representations that were made to him by Sgt. Shelton, the Military Police investigator.

The plaintiff's contention that the Supreme Court's decision in *Coolidge v. New Hampshire, supra,* precludes a commanding officer from acting as a magistrate is unfounded. The argument ignores the Court's recognition that "the military is, by necessity, a specialized society, separate from civilian society." *Parker v. Levy,* 417 U.S. 733, 743, 94 S.Ct. 2547, 2555, 41 L.Ed.2d 439 (1974). The military courts have consistently held that a military commander is capable of acting in the impartial manner which the Fourth Amendment requires. There is no reason for this court to dispute that conclusion. *See Wallis v. O'Kier,* 491 F.2d 1323, 1325 (10th Cir.1974).

■ In any event, the circumstances that Captain Case, who authorized the search of the plaintiff's room, was the Company Commander of a Military Police Company, was the Building Commander of Patton Barracks, and was acquainted with the informant whose report of alleged wrongdoing on the plaintiff's part led to the granting of authority for the search of the plaintiff's room, certainly did not create such a "fundamental defect" (*Schlesinger v. Councilman, supra,* 420 U.S. at 747, 95 S.Ct. at 1307) in the court-martial proceedings as

would justify the court in overturning the plaintiff's court-martial conviction and sentence.

## II

■ The plaintiff's assignment of error discussed in part I of the opinion is closely related to another contention of the plaintiff to the effect that "The military judge erred in denying defendant's motion to suppress because there was insufficient showing of probable cause for the authorization of a search."

A determination of the question concerning the existence or nonexistence of probable cause requires a factual inquiry. "Probable cause to search exists if the facts and circumstances justify a prudent man in concluding that an offense has been or is being committed." *United States v. Ness, supra,* 13 U.S.C.M.A. at 23, 32 C.M.R. at 23.

This issue as to probable cause was raised and argued on behalf of the present plaintiff before the military judge at the court-martial trial, before the Army Court of Military Review, and before the Court of Military Appeals. The plaintiff's contention was rejected at each level in the military court proceedings; and the Court of Military Appeals included a specific finding that "there was a sufficient showing of probable cause to search."

As the plaintiff's contention on probable cause received "fair consideration" (*Burns v. Wilson, supra,* 346 U.S. at 144, 73 S.Ct. at 1049) in the military court system, the adverse determination by the military courts, and particularly the specific finding by the Court of Military Appeals, is conclusive on this court.

■ Furthermore, the summary of the pertinent facts relative to the circumstances under which Captain Case authorized the search of the plaintiff's room, as set out near the end of the discussion in part I of this opinion, shows that Captain Case received sufficient information concerning the reliability of the informant and the violations of military law in which the plaintiff allegedly was involved to establish

the existence of probable cause. *See Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *United States v. Lidle,* 21 U.S.C.M.A. 455, 457, 45 C.M.R. 229, 231 (1972).

### III

■ Another assignment of error relied on by the plaintiff is to the effect that "The military judge erred in denying the motion to suppress as such search and seizure were not lawful because of an improper authorization to search."

It was mentioned in part I of the opinion that Captain Case, in authorizing the search of the plaintiff's room, was acting pursuant to a delegation of authority from Colonel John J. Cassidy, Commanding Officer of Special Troops at Heidelberg, who maintained his headquarters in Patton Barracks. The plaintiff's assignment of error now under consideration asserts that Colonel Cassidy was not empowered to authorize searches at Patton Barracks—and, therefore, could not delegate such power to Captain Case—because Colonel Cassidy was not "the senior regularly assigned officer present" at Patton Barracks.

Two Army Regulations are pertinent to the present inquiry. One is AR 190–22, ¶ 2–1(a) (12 June 1970), which provides in part as follows:

> * * * The commanding officer having jurisdiction over the place where the property is situated or, if the property is in a foreign country * * *, over personnel subject to military law * * * who have control or possession of the property may authorize a search of such property. * *

In order to determine who the "commanding officer having jurisdiction" is in a particular situation, it is necessary to consider AR 600–20, ¶ 3–2(a) (change 3, 22 June 1973), which provides in part as follows:

> Command of an installation, activity, or unit of platoon size or larger normally is the responsibility of the senior regularly assigned officer present * * *.

The evidence in the court-martial record indicates that, insofar as date of rank was concerned, the "senior regularly assigned officer present" at Patton Barracks when the events relevant to this case happened was a colonel serving as Deputy Community Commander of the Heidelberg Community, who maintained his office in Patton Barracks. It is not clear whether the occupant of this position at the time was a Colonel Saddler or a Colonel Callahan, as the witnesses were uncertain as to when Colonel Saddler succeeded Colonel Callahan as Deputy Community Commander. In any event, both Colonel Saddler and Colonel Callahan were senior in date of rank to Colonel Cassidy.

The evidence further shows, however, that the Deputy Community Commander did not have any command authority over troops billeted in Patton Barracks. The "senior regularly assigned officer present" at Patton Barracks with command authority over troops billeted there was Colonel Cassidy, Commanding Officer of Special Troops.

As indicated in part I of this opinion, when the plaintiff's defense counsel at the court-martial trial moved to suppress the evidence that had been seized at the time of the search of the plaintiff's room, he did so on two grounds: first, that Captain Case, the authorizing officer, was not an impartial magistrate; and, second, that no probable cause for the search existed. The motion to suppress was argued by the attorneys, and denied by the military judge, on the basis of these two contentions.

Later in the trial, the military judge, on his own initiative, raised a question as to whether, in the light of the decision in *United States v. Azelton,* 49 C.M.R. 163 (1974), Colonel Cassidy had any power to authorize searches at Patton Barracks, which he could delegate to Captain Case. Evidence on this point was received, and the defense counsel and trial counsel argued the matter before the military judge. At the conclusion of the argument, the military judge announced that he would adhere to his previous ruling which denied the plaintiff's motion to suppress.

The matter of whether Colonel Cassidy had any power to authorize searches at Patton Barracks, which he could delegate to Captain Case, was briefed before the Army Court of Military Review and before the Court of Military Appeals, with results adverse to the plaintiff. This matter was not specifically mentioned by the Army Court of Military Review in its decision, which, in general language, merely approved the findings of guilty and the sentence in the plaintiff's case. The decision by the Court of Military Appeals on this issue stated that "the delegation of search authority was lawful," without any explanation of the reasoning which led the Court of Military Appeals to this conclusion.

It must be inferred that, as the property searched in this case (*i.e.*, a room in Patton Barracks) was located "in a foreign country," the military courts concluded that it was Colonel Cassidy, rather than the Deputy Community Commander, who was vested with the power to authorize searches at Patton Barracks, because Colonel Cassidy was "the senior regularly assigned officer present" at Patton Barracks with "jurisdiction * * * over personnel subject to military law * * * who have control or possession" of rooms in Patton Barracks. (No question has been raised as to whether the power was delegable by the proper officer.)

As the plaintiff's contention that Colonel Cassidy did not possess the power to authorize searches at Patton Barracks was given "fair consideration" (*Burns v. Wilson, supra*, 346 U.S. at 144, 73 S.Ct. at 1049) by the military courts, and as the interpretation by the military courts of AR 190–22, ¶ 2–1(a), and AR 600–20, ¶ 3–2(a), was not unreasonable, it is concluded that no "fundamental error" (*Schlesinger v. Councilman, supra*, 420 U.S. at 747, 95 S.Ct. at 1307) was committed by the military courts in disposing of this particular issue.

### IV

A fourth "point of error" assigned by the plaintiff is that "There is insufficient evidence to support a finding of guilty beyond a reasonable doubt."

In this assignment of error, the plaintiff attacks the credibility of PFC Bennet, the informant and the principal witness against the plaintiff at the latter's court-martial trial; and the plaintiff also contends that because the hashish was found in a room which the plaintiff occupied jointly with another soldier, the plaintiff's guilt of the offense of possession was not established beyond a reasonable doubt.

The plaintiff's attack on the sufficiency of the evidence to establish his guilt beyond a reasonable doubt was argued before the Army Court of Military Review and before the Court of Military Appeals. Upon its initial review of the plaintiff's case, the Court of Military Appeals remanded the case to the Army Court of Military Review for reconsideration of the evidence in the light of the then-recent decision in *United States v. Wilson*, 7 M.J. 290 (C.M.A.1979). The military court in the *Wilson* case stated in part as follows (*id.* at 295) with respect to the ownership of contraband discovered in premises jointly occupied by the accused and someone else:

> [W]here one is in nonexclusive possession of premises, it cannot be inferred that he knew of the presence of drugs or that he had control of them unless there are other incriminating statements or circumstances tending to buttress such an inference.

On the remand, the Army Court of Military Review found that the evidence adduced at the plaintiff's court-martial trial met the *Wilson* test and proved the plaintiff's possession of the contraband beyond a reasonable doubt.

Thus, the plaintiff's contention regarding the alleged insufficiency of the evidence received from the military courts the "fair consideration" required by *Burns v. Wilson, supra*, 346 U.S. at 144, 73 S.Ct. at 1049.

In exercising the power of collateral review over a court-martial judgment, it is not the function of a civil court to reexamine and reweigh the evidence. *Taylor v. United States, supra*, 199 Ct.Cl. at 174; *Owings v. Secretary of the Air Force*, 447 F.2d

1245, 1261 (D.C.Cir.1971). Factual determinations by a court-martial "are not of constitutional significance" and, therefore, are beyond the scope of review by a civil court (*Levy v. Parker,* 478 F.2d 772, 797 (3rd Cir.1973), *aff'd,* 417 U.S. 733, 94 S.Ct. 254, 41 L.Ed.2d 439 (1974)), so long as the court-martial trial was "a disciplined contest" and not "a spectacle" or a "trial by ordeal" (*United States v. Augenblick, supra,* 393 U.S. at 356, 89 S.Ct. at 533).

In the present case, there is no proper basis on which the court could independently evaluate the credibility of PFC Bennet, or otherwise independently determine the sufficiency of the evidence, as requested by the plaintiff.

### V

A fifth alleged error assigned by the plaintiff is that "There is a fatal variance in the specifications and the evidence."

As previously indicated in the opinion, the plaintiff was charged and convicted of the offenses of possessing and transferring marihuana. The evidence adduced at the trial related to the discovery of hashish in the plaintiff's room and to the transfer of hashish by the plaintiff to another soldier.

Both marihuana and hashish are substances derived from the hemp plant (*cannabis*) and are used for their intoxicating effect. Webster's New International Dictionary (2nd Edition, Unabridged, 1955). Thus, both marihuana and hashish are derived from a common source, and the term "marihuana" is sufficiently general in scope to include hashish. *Hamid v. Immigration & Naturalization Service,* 538 F.2d 1389 (9th Cir.1976).

■■■ Furthermore, a variance between a criminal charge and the proof is not fatal if the accused is definitely informed as to the charges against him, so that he is enabled to present his defense and not be taken by surprise by the evidence offered at the trial, and if he is protected against another prosecution for the same offense. *Berger v. United States,* 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935). In the present case, there is nothing in the record tending to indicate that the plaintiff was misled by the language used in the charges against him, or that his ability to prepare for trial was impaired. Also, it is clear that the plaintiff will be protected against another prosecution for the same offense. Consequently, the plaintiff was not prejudiced by the circumstance that he was charged with the possession and transfer of marihuana, and the proof related to the possession and transfer of hashish.

### VI

■■■ The plaintiff's sixth and last assignment of error is that "The punishment imposed was harsh and inequitable and should be substantially reduced."

The punishment imposed on the plaintiff by the special court-martial in this case was substantially below the maximum limits fixed by military law for the offenses of possessing and transferring marihuana (or hashish). As this was a matter entrusted by law to the discretion of the court-martial and the reviewing military authorities, the plaintiff's claim relative to the court-martial sentence does not rise to the "constitutional level" (*United States v. Augenblick, supra,* 393 U.S. at 351–52, 89 S.Ct. at 531). Accordingly, the court lacks jurisdiction to consider whether the punishment assessed "was harsh and inequitable," as contended by the plaintiff.

### Conclusion

For the reasons stated in the opinion, the plaintiff's motion for summary judgment is denied, and the defendant's cross-motion for summary judgment is granted, with the petition to be dismissed.

It is so ordered.