UNITED STATES

v.

Captain Harold U. REPP, 179–40–2426 FV, United States Air Force.

ACM 25211.

U.S. Air Force Court of Military Review.

6 Oct. 1986.

Appellate Counsel for the Appellant: Mr. Norman L. Goldberg, Media, Pennsylvania. Colonel Leo L. Sergi and Captain Charles L. Wille.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Captain Marc Van Nuys.

Before HODGSON, FORAY and MICHALSKI, Appellate Military Judges.

## DECISION

**HODGSON, Chief Judge:**

The case before us is one of first impression and involves evidence obtained from a body view. The applicable evidentiary rule states:

RULE 312. BODY VIEWS AND INTRUSIONS

(a) GENERAL RULE. Evidence obtained from body views and intrusions conducted in accordance with this rule is admissible at trial when relevant and not otherwise inadmissible under these rules.

(b) VISUAL EXAMINATION OF THE BODY

\*    \*    \*    \*    \*    \*

(2) INVOLUNTARY. An involuntary display of the unclothed body, including a visual examination of body cavities, may be required only if conducted in a reasonable fashion and authorized under the following provisions of the Military Rules of Evidence: .... *searches incident to lawful apprehension* under Mil.R.Evid. 314(g) [Emphasis added].

\*    \*    \*    \*    \*    \*

(d) EXTRACTION OF BODY FLUIDS. Nonconsensual extraction of body fluids, including blood and urine, may be made from the body of an individual pursuant to search warrant or a search authorization under Mil.R.Evid. 315.... Involuntary extraction of body fluids under this rule must be done in a reasonable fashion by a person with appropriate medical qualifications.

Mil.R.Evid. 312 has no counterpart in the Federal Rules of Evidence and it represents an attempt by the drafters of the Military Rules of Evidence to merge the prior case law touching on self-incrimination [1] with the right to freedom from unreasonable searches.

### I

The appellant is a rated Air Force officer who stands convicted of using heroin. On appeal, as at trial, he challenges the methods by which his heroin use was discovered. In general the essential facts are undisputed. The evidence revealed that on 1 March 1985, civilian law enforcement officers were conducting a "stake-out" of the residence of a known heroin addict who was suspected of being a drug dealer. While the police were watching the house, approximately eight to ten individuals ar-

---

1. Historically, under both civilian and military law, a suspect may be compelled to perform such acts as trim or grow a beard, try on clothes, submit to fingerprinting or exhibit scars. M.C.M.1969 (Rev.), para. 150(b); *United States v. Rosato,* 3 U.S.C.M.A. 143, 11 C.M.R. (1953) and cases cited therein. Such acts were viewed as not involving self-incrimination.

rived and left shortly after completing a "transaction" of some type. Later, between 1200 and 1300 hours, a bright red Corvette with Oregon tags arrived driven by an individual described as 6'2", slender with sandy brown hair and wearing a green military uniform, i.e., a "jump suit with colorful patches on the shoulders." He stayed a few minutes and left. A short time thereafter using a warrant issued by a civilian magistrate, the residence was searched. Twenty-seven "balloons" of heroin, together with syringes and $6,000.00 in cash, were uncovered.

On 4 March, the civilian police told military investigators at George Air Force Base about the red Corvette with Oregon tags driven by an individual who was apparently a servicemember. Later the car was identified as the appellant's. On the afternoon of the next day, 5 March, the appellant was taken from the squadron lounge to the Office of Special Investigations (OSI). There, the appellant contends that while he was advised of his right to counsel and given codal warnings, he was not informed of the offense of which he was suspected. The appellant further states he asked for a lawyer "three or four times," but none was provided. What occurred next is contested. The appellant maintains he was required to remove his flight suit leaving him in his underwear while his arms were examined. The investigator who conducted the body view stated that initially the appellant was asked only to unzip the flight suit to the waist. In any event, needle marks were found on the appellant's right and left forearms and on his ankles. At this point he was asked to disrobe completely and his entire body was examined and photographed. The record is clear that the appellant did not consent to this procedure.

Later, at approximately 1830 hours the appellant was taken to the emergency room of the base hospital and examined by a physician. This examination disclosed approximately ten puncture marks on the hands, forearms and ankles that were consistent with a hypodermic needle injection. The appellant also manifested capillary changes, i.e., eyes abnormally large, and blood pressure and pulse changes which are symptomatic of narcotic withdrawal.

That evening, pursuant to a search authorization, the appellant was required to provide a urine sample and permit a medical technician to withdraw blood. Laboratory tests on each specimen revealed the presence of opiates.

## II

The appellant first urges that he had a reasonable expectation of privacy in his forearms which he chose to shield from public view by wearing a long sleeve garment. We note, however, the decision of what clothing to wear was not his. He was required to wear the standard Air Force flying uniform. He argues that requiring him to expose his arms was just as much a search as asking him to empty his pockets, a position held in *United States v. Kinane*, 1 M.J. 309 (C.M.A.1976). In that case the court held that a detective's action in demanding that an accused remove items from his pockets constituted a "search" within the ambit of the Fourth Amendment. He also directs our attention to *State v. Brown*, 25 Wis.2d 413, 130 N.W.2d 760 (1964), wherein the Wisconsin Supreme Court stated that looking for needle marks on the arms of a suspect was a search within the meaning of the term.

■ The editorial comment to Rule 312 opines that the rule applies a sliding scale to body evidence problems—the greater the Fourth Amendment intrusion, the broader the protection. At the least intrusive end of the scale are those slight intrusions such as visual examinations of the body. At the other end are gross intrusions, like surgical procedures to recover evidence. S. Saltzburg, L. Schinasi and D. Schlueter, *Military Rules of Evidence*, 2d ed., p. 221. As we stated earlier, Rule 312 has no civilian equivalent, but decisions from state and federal appellate courts can give guidance as to what is a minimal intrusion. The Supreme Court of Georgia held that swabbing a suspect's hands to obtain gunpow-

der residue was not a search nor did it amount to self-incrimination. *Strickland v. State*, 247 Ga. 219, 275 S.E.2d 29 (1981). In a similar case the New York Court of Appeals in *People v. Wesley*, 88 Misc.2d 177, 387 N.Y.S.2d 34 (N.Y.Sup.1976), stated that shining an ultra-violet light on an accused's hands was not a search. In a recent New Jersey case the appellant argued that the police had no right to "visually inspect" the soles of his shoes which were concealed from view because he was standing. There the Appellate Division of the New Jersey Superior Court ruled that for a visual inspection to constitute a "search", the accused must have had a reasonable expectation of privacy in the area searched. The court found only a minimal expectation in the soles of shoes. *State v. Bates*, 202 N.J.Super. 416, 495 A.2d 422 (1985). We reach the same conclusion here. Forearms possess no reasonable expectation of privacy. They are routinely exposed to public view as are other parts of the body. Had the appellant not been assigned to a flying unit, he might very well have worn a short sleeve uniform shirt to perform his military duties. *See United States v. Murphree*, 497 F.2d 395 (9th Cir.1974).

Before further discussion in this area, it is well to remember that, subject to the qualification that they must be consistent with the U.C.M.J. and the United States Constitution, the publication of new rules to proscribe the mode of proof before courts-martial is within the authority of the President. Article 36, U.C.M.J.; *United States v. Gladwin*, 14 U.S.C.M.A. 428, 34 C.M.R. 208 (1964). The promulgation of the Military Rules of Evidence in 1980 was a proper exercise of such authority. See E.O. 12233, 1 September 1980; *Sec. and Law Enforcement Emp., Dist. C. v. Carey*, 737 F.2d 187 (2d Cir.1984).

Accordingly, we conclude that requiring the appellant to display his body to police was not a search under the Fourth Amendment, but a visual examination that is permitted by Mil.R.Evid. 312. The actions of the officers were minimally intrusive in an area where the appellant had no reasonable expectation of privacy. *See United States v. Ferri*, 778 F.2d 985 (3rd Cir.1985); *see generally United States v. Palmer*, 575 F.2d 721 (9th Cir.1978); *United States v. Murphree, supra.*

Interwoven with his challenge that requiring him to display his forearms was a search, the appellant also urges that accepting, *arguendo*, that body views are a lesser intrusion than a search, the police were still prohibited from taking the action they did. His argument in this regard is two-fold: (1) no probable cause existed for law enforcement officers to "detain" him at OSI headquarters, and (2) his status while there was as a "detainee" not someone who had been apprehended for the commission of a crime. Appellate defense counsel remind us that involuntary visual examinations under Rule 312(b) are allowed only in conjunction with searches incident to a lawful apprehension under Mil.R.Evid. 314(g).

■ Discussing the second assertion first, a determination as to whether an apprehension has been effected involves substance rather than form. No specific words or any words at all need be used. All that is required is the individual's freedom of locomotion be curtailed and this is communicated to him. *United States v. Horst*, 17 M.J. 796 (A.F.C.M.R.1983); *United States v. McCutchins*, 37 C.M.R. 678 (A.C.M.R.1967). Applying this criteria to the facts at hand, we have no hesitation in concluding that the appellant was in fact apprehended. He was transported to the OSI office in the company of two investigators; given codal warnings and advised as to the right to counsel and placed in a room where others could come and go but he could not. An apprehension is the equivalent of an arrest and occurs when, in view of all the circumstances surrounding the situation, a reasonable person would have believed he was not free to leave. R.C.M. 302; *United States v. Spencer*, 11 M.J. 539 (A.C.M.R.1981). The facts clearly support the conclusion that the appellant had been apprehended when the visual examination of his forearms was accomplished.

We also conclude that ample probable cause existed to apprehend the appellant. The investigators had in their possession information that an individual meeting the appellant's description, i.e., height, build, hair and wearing a military uniform and driving a car that matched his in color, model and state tags was seen entering the residence of a known drug dealer. A subsequent search of the dealer's house disclosed heroin packaged for sale and related drug paraphernalia. The test for probable cause to apprehend a suspect *is not* proof beyond a reasonable doubt, but information which would lead a reasonable, cautious and prudent police officer to believe an offense has been or is being committed. *United States v. Horst, supra.* In our view, the investigators possessed such information.

Having determined that the apprehension was based on probable cause, we now turn to the non-consensual extraction of the appellant's urine and blood. Rule 312(d) permits such extraction pursuant to a search authorization which the appellant at trial conceded was obtained. Mil.R.Evid. 315. He did not challenge the search authorization for lack of probable cause. *See* Mil.R.Evid. 311(a)(1).

Finally, the appellant maintains that forcing him to completely disrobe after needle marks were observed on his arms and ignoring his repeated requests for counsel tainted the later taking of his urine and blood specimens. We find no fault with the investigators continuing their visual examination of the appellant's body after the discovery of needle marks. Such a procedure is within the intent and purpose of Rule 312, and there is no requirement that medical personnel be present at the time. *People v. Green,* 52 Ill.App.3d 636, 10 Ill.Dec. 452, 367 N.E.2d 1061 (1977). Further, the appellant is not entitled to have counsel present during the visual examination of his body. He was not being interrogated and he made no "statement" within the meaning of either the Fifth Amendment or Article 31 of the Code. *See United States v. Rushing,* 17 U.S.C.M.A. 298, 38 C.M.R. 97 (1967); see also *United States v. Roa,* 20 M.J. 867 (A.F.C.M.R.1985). This is not the situation discussed in *United States v. Goodson,* 22 M.J. 22 (C.M.A.1986), wherein an accused repeatedly asked for counsel, was ignored and later gave a statement that was used at trial. The trial judge properly denied the motion to suppress the evidence obtained from the body view.

### III

Appellate defense counsel contend that their client's conviction cannot stand because the appellate record when received by us did not contain a written pretrial advice prepared by the staff judge advocate. R.C.M. 406(a). During oral argument we questioned appellate government counsel concerning this irregularity. We opined that the advice, if accomplished, should have been attached to the record. R.C.M. 1103(b)(3)(A)(ii). By motion, which we grant, the government offers the written pretrial advice submitted by the staff judge advocate to the convening authority. It is clear that the latter officer had this document to review prior to referring the offense to trial by general court-martial. The record of trial was not properly assembled initially, but this administrative error did not prejudice the appellant.

We have reviewed the evidence in this trial and are convinced beyond a reasonable doubt of the appellant's guilt. Article 66(c), U.C.M.J. For the reasons stated, the findings of guilty and the sentence are

AFFIRMED.

Senior Judge FORAY and Judge MICHALSKI concur.