Harold U. **REPP**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 90–437C.

United States Claims Court.

July 26, 1991.

---

Eugene Fidell, Washington, D.C., for plaintiff.

Steven Glickman, American Civil Liberties Union, Washington, D.C., filed an *amicus* brief.

Mark D. Rubino, Washington, D.C., with whom were David M. Cohen, Director, Commercial Litigation Branch, and Stuart M. Gerson, Asst. Atty. Gen., Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant. Major Darrell L. Secrest, Washington, D.C., of counsel.

## OPINION

SMITH, Chief Judge.

This military back pay case is before the court on the parties' cross-motions for summary judgment. The plaintiff is a former Air Force pilot who was court-martialled for heroin use. He was discharged and sentenced to three years' hard labor. He has completed his sentence. The plaintiff alleges that the Air Force violated his Fourth Amendment rights when it detained and searched him without probable cause. The government initially contended that this court did not have jurisdiction to hear the case, nor could the court overturn the substantive decisions of the military courts. At oral argument, this position was abandoned by the government in light of *Matias v. United States,* 923 F.2d 821 (Fed.Cir. 1990), which the Court of Appeals for the Federal Circuit decided, following the briefing in this case. The government still however, argues that on the merits the plaintiff is not entitled to relief. Upon reading both parties' briefs, researching the relevant law, and hearing oral argument, the court denies the plaintiff's motion and grants the defendant's motion.

## FACTS

The facts of the case are described more fully in the opinion of the United States Air Force Court of Military Review (A.F.C.M.R.), *United States v. Repp*, 23 M.J. 589 (A.F.C.M.R.1986). A brief recitation is in order, however.

On March 1, 1985, William Bethke, a detective with the San Bernadino County sheriff's office, was watching the home of Steve Collins, a known heroin user and suspected heroin dealer, in Hisperia, California. During his surveillance, Bethke saw several individuals, many of whom Bethke knew to be heroin users, approach Collins' residence. Each caller followed the same pattern in contacting Collins: the caller would approach the house trailer located behind Collins' house, knock on the door, and call out "Steve, Steve." Collins would then open the door, and exchange something with the visitor. The visitor would leave. Bethke concluded that Collins was making heroin sales.

Sometime between noon and 1 p.m., that day, Bethke noticed a red, late-model Corvette with an Oregon license plate pull into Collins' driveway. Bethke described the car's driver and only occupant as a male, six feet two inches in height, with sandy-colored hair. He was wearing a green, one-piece jump-suit covered with patches. Bethke believed that the man was wearing a military uniform. The man got out of the car and walked up to Collins' trailer. He knocked on the door, calling out "Steve, Steve." There was apparently no answer. The man returned to his car and drove off very quickly. Bethke did not notice a license plate on the front of the car. Shortly thereafter, Bethke obtained a warrant to search Collins' residence. The search turned up 27 balloons of heroin, $6,000 in cash, several syringes and a quantity of methamphetamine.

The following Monday, March 4, 1985, Bethke called Technical Sergeant Weinstock of nearby George Air Force base's Air Police. Bethke described the events of the past week concerning the red Corvette and its driver. Weinstock initiated a search on base for a new model, red Corvette with an Oregon plate. He found a car matching that description in a parking lot adjacent to the flight simulator building. The car was registered to then Captain Harold U. Repp.

The following day, March 5, 1985, security police investigators contacted Repp. They escorted him to the Office of Special Investigations (OSI). There he was informed that he was suspected of drug-related offenses. He was advised of his Article 31, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 831 (1982), rights and his right to counsel, which he asserted. Sergeant Timothy Peters then asked Repp to remove his flight jacket and the top portion of his flight suit so that his forearms could be viewed for evidence of puncture marks. Repp unwillingly complied. Peters noticed 10 to 15 puncture marks on each arm. Peters and Repp were alone during the viewing, and the door to the room was closed. Repp was wearing a tee-shirt; he was not required to remove the flight suit below the waist. Peters, who had experience and training in narcotics methods, noted intravenous marks on the forearms. He concluded that the marks appeared to be needle marks. Some marks appeared fresh.

After Peters' initial visual inspection, Repp was required to totally disrobe for a complete inspection. Standard procedures called for spreading apart the buttocks to check for needle marks. There was conflicting testimony that Repp's body cavities were searched. Repp alleges that Peters checked under his tongue. Peters denies looking in Repp's mouth. Following these inspections at the OSI, Repp was transported to the hospital for a physical examination. OSI investigators then obtained a search authorization[1] for bodily fluids. Analysis of these samples disclosed the presence of the metabolite of heroin and morphine in the body.

At trial, Repp attempted to suppress the test results, claiming that they were the fruits of an unlawful search. Specifically,

---

1. A search authorization is equivalent to a search warrant. Mil.R.Evid. 315(f).

Repp alleged that the inspection of his arms for needle marks and the subsequent full body examinations constituted "body views" without prior authorization, in violation of Mil.R.Evid. 312. The military judge, after hearing testimony and argument, denied the motion and admitted the evidence. He held that Repp had no reasonable expectation of privacy in his forearms. On August 29, 1985, the court convicted Repp of use of heroin. The court sentenced Repp to be dismissed from the Air Force, confined for three years, and to forfeit $2300 per month for three years. On February 24, 1986, the general courts-martial convening authority approved the findings and sentence, though the forfeitures were reduced to $1583 per month for three years.

On October 6, 1986, the Air Force Court of Military Review approved the finding of guilt and the sentence. *United States v. Repp*, 23 M.J. 589 (A.F.C.M.R.1986). Exercising the fact finding authority pursuant to Article 66(c), UCMJ, the AFCMR made a factual determination that Repp had been apprehended based upon ample probable cause when the visual examination of his forearms was accomplished. On May 28, 1987, the Court of Military Appeals denied discretionary review of the plaintiff's conviction. 24 M.J. 339 (C.M.A.1987). On July 22, 1987, the Court of Military Appeals granted reconsideration, and summarily affirmed. 24 M.J. 447 (C.M.A.1987). The Supreme Court of the United States denied Repp's petition for a writ of certiorari on January 19, 1988. 484 U.S. 1025, 108 S.Ct. 749, 98 L.Ed.2d 762 (1988). Repp filed this suit on May 22, 1990.

## DISCUSSION

■ In its Motion to Dismiss, or in the Alternative, for Summary Judgment, the government claims that this court does not have jurisdiction over Repp's case. It gives four reasons for this view: Congress withheld authority for this court to set aside courts-martial; servicemen have the option of appealing to the Supreme Court for review, which Repp did; the Court of Military Appeals (CMA) has "general su-

pervisory power" over all courts-martial; and, it claims, the Supreme Court has found no constitutional right exists for servicemen to have a civilian trial.

These arguments can be dealt with easily, in light of the Federal Circuit's recent decision in *Matias v. United States*, 923 F.2d 821 (Fed.Cir.1990). There, the Federal Circuit rejected the government's almost identical four-pronged attack on the this court's jurisdiction over military pay cases. The Court of Appeals affirmed Judge Yock's decision, 19 Cl.Ct. 635 (1990), when it found that notwithstanding changes in the law, the Claims Court did have jurisdiction over a former serviceman's claim for back-pay. The Court of Appeals addressed succinctly each of the four arguments, finding that none was applicable. This court is of course bound by the decision of the Federal Circuit. The government has conceded its argument in light of *Matias*.

### Standard to Recover Back–pay

■ The "narrow window" for challenging decisions of courts-martial in this court is open only for the purpose of addressing issues of "fundamental fairness in military proceedings and constitutional guarantees of due process." *Matias*, at 826 (quoting lower court opinion). To succeed in this court the plaintiff must demonstrate a fundamental deprivation of due process. A fundamental deprivation of due process is defined as a situation in which "the barriers and safeguards are so relaxed or forgotten ... that the proceeding is more a spectacle ... or trial by ordeal ... than a disciplined contest." *Matias*, at 826 (citing *United States v. Augenblick*, 393 U.S. 348, 356, 89 S.Ct. 528, 534, 21 L.Ed.2d 537 (1969)). In addressing these issues, the court is aware that an individual's constitutional rights are not totally surrendered once he puts on a uniform. *Chappell v. Wallace*, 462 U.S. 296, 304, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983). However, the fourth amendment does not always apply in the military setting. *United States v. Grisby*, 335 F.2d 652 (4th Cir. 1964). Servicemembers' rights must be conditioned to meet the demands of military duty. *Parker v. Levy*, 417 U.S. 733,

94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). Specifically, in this case the court must consider the following factors: whether a search occurred within the meaning of the fourth amendment; if so, was it reasonable; was Repp apprehended[2] at the time of search; did probable cause exist for any such detention/apprehension; and finally, assuming the OSI's actions were improper, whether the harmless error or inevitable discovery doctrines apply.

*Inspection/Search*

■ It is undisputed that Repp was forced to remove the top portion of his flight suit to expose his forearms and elbows to the OSI. This action has been characterized as both an inspection (not a search) and a search. If this action is not a search as the Air Force Court of Military Review held in *United States v. Repp*, 23 M.J. 589 (A.F.C.M.R.1986), then the court must deny Repp's request for back-pay. Even if it were a search, it would have had to have been an unreasonable one for plaintiff to prevail here. Therefore, the court must decide first whether a search occurred, and if so, whether it was reasonable.

■ A search is looking for or seeking out something which is not in public view. It is an infringement on a person's reasonable expectation of privacy. Whether something is a violation of a person's expectation of privacy is determined by a two-part test: First, the person must have shown a subjective expectation of privacy; second, the expectation must be one which society is prepared to recognize as reasonable. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The asserted expectation of privacy here fails to meet the second prong of the privacy expectation test because any expectation of privacy was not reasonable in these circumstances.

1. Absence of a search.

■ The fourth amendment, while applicable to the military, must be applied in light of the special demands of the military mission. As a member of the armed forces, Repp had no say over the clothes he was to wear. His commander could have easily changed the mode of dress. The uniform of the day could have been short-sleeved shirts.[3] Repp, and indeed all service personnel, are expected, when the need arises, to work for long periods of time without proper rest or nourishment. Repp was an Air Force pilot. As such he operated some of the most sophisticated machinery known to man, which would require his peak mental and physical abilities. Had Repp's commander probable cause to believe that Repp had been sleepy or ill or drinking there can be no doubt that he would have been able to inspect Repp's eyes, breath, and general steadiness to determine if he was fit to fly. That situation is analogous to the instant case.[4]

The court finds that when Repp's forearms were inspected; he was not searched within the meaning of the fourth amendment.

2. Assuming a search.

Assuming *arguendo* that Repp was searched, the court must decide whether it was a reasonable search incident to apprehension. If there is an apprehension, the police may make a search incident to the apprehension. If there is a search warrant, clearly a search can take place within

**2.** Apprehension is the military equivalent of a civilian arrest. *See* Rules of Courts–Martial (R.C.M.) 302 (discussion).

**3.** Plaintiff's counsel claims that Mil.R.Evid. 312 proscribes "involuntary display[s] of the unclothed body." However, Repp's forearms were not a part of his body over which he could expect privacy; no more so than his face or hands.

**4.** The Air Force Court of Military Review cites *State v. Bates*, 202 N.J.Super. 416, 495 A.2d 422

(1985) as another analogous situation in which no search occurred. In *Bates* the Appellate Division of the New Jersey Superior Court held that the accused had only a minimal expectation of privacy in the soles of his shoes. *See also United States v. Ferri*, 778 F.2d 985 (3d Cir. 1985), *cert. den. Ferri v. United States*, 476 U.S. 1172, 106 S.Ct. 2896, 90 L.Ed.2d 983 (1986) (compelling suspect to provide footprint impressions not "search" within fourth amendment).

the bounds of the warrant. If the police do not have a warrant, they cannot search in the absence of one of the exceptions to the warrant requirement. *United States v. Carrasquillo*, 877 F.2d 73 (D.C.Cir.1989).[5] In any case, probable cause is required for the apprehension. Pursuant to 10 U.S.C. § 836 (1988), the military has its own rules of evidence. Those rules lay out the standards by which searches, seizures, and apprehensions are to be judged. The appropriate language from those rules is provided below.[6] The Air Force Court of Military Review found that the military police had apprehended Repp when they inspected his forearms. *Repp*, 23 M.J. at 592; Mil. R.Evid. 314(g). A search incident to apprehension is permitted to find and seize weapons or destructible evidence in the area of immediate control of the apprehended. Mil.R.Evid. 314(g)(2). Searches incident to apprehension are full in scope. *cf. Cotton v. United States*, 371 F.2d 385, 392–93 (9th Cir.1967). At issue then is whether Repp was validly apprehended at the time of the alleged search. The validity of the arrest or apprehension is dependent on whether there was probable cause.

### Probable cause

■ The government contends that probable cause is a factual issue, and therefore, it cannot be attacked in the Claims Court. In particular, the government cites to *Bowling v. United States*, 552 F.Supp. 54, 1 Cl.Ct. 15, 22 (1982), which held that the plaintiff's allegations of lack of probable cause were fairly considered in the military courts, which precluded Claims Court review of their probable cause findings. Normally, probable cause is a mixed question of fact and law. *Maghan v. Jerome*, 88 F.2d 1001, 1002 (D.C.Cir.1937). However, when there is no dispute regarding the facts, probable cause is a question of law, which can be addressed de novo. *United States v. Miller*, 925 F.2d 695, 697 (4th Cir.1991); *cf. Brown v. Selfridge*, 224 U.S. 189, 193, 32 S.Ct. 444, 446, 56 L.Ed. 727 (1912).

■ The standard for probable cause is difficult to define. Probable cause is dependent upon facts and circumstances "sufficient in themselves to warrant a [person] of reasonable caution in the belief" that a crime has occurred. *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925). The probable cause for Repp's apprehension is based on the description the civilian police gave the OSI. A man of Repp's general appearance, wearing clothes similar to what Repp would wear, driving an auto similar to Repp's[7],

---

**5.** The other main permissible warrantless search is in a *Terry*-stop situation. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). If an officer has a reasonable suspicion of criminal activity and he fears for his safety, but lacks probable cause, he can frisk the suspect to ascertain whether the individual is carrying a firearm. The frisk is only for firearms or other weapons. Neither side has indicated that Mr. Repp was *Terry*-stopped and frisked.

**6.** Military Rule of Evidence (Mil.R.Evid.) 312. Body views and intrusions.

(2) Involuntary. An involuntary display of the unclothed body, including a visual examination of body cavities, may be required only if conducted in reasonable fashion and authorized under the following provisions of the Military Rules of Evidence; inspections and inventories under Mil.R.Evid. 313; searches under Mil.R.Evid. 314(b) and 314(c) if there is a reasonable suspicion that weapons, contraband, or evidence of crime is concealed on the body of the person to be searched; searches within jails and similar facilities under Mil.R.Evid. 314(h) if reasonably necessary

to maintain the security of the institution or its personnel; searches incident to lawful apprehension under Mil.R.Evid. 314(g); emergency searches under Mil.R.Evid. 314(i); and probable cause searches under Mil.R.Evid. 315.

Rule 314. Searches not requiring probable cause.

(g) Searches incident to a lawful apprehension.

(1) General Rule. A person who has been lawfully apprehended may be searched.

(2) Search for weapons and destructible evidence. A search may be conducted for weapons or destructible evidence in the area within the immediate control of person who has been apprehended. The area within the person's "immediate control" is the area which the individual searching could reasonably believe that the person apprehended could reach with a sudden movement to obtain such property....

**7.** Indeed, it was a red Corvette with an Oregon plate. The police stakeout and military base were in California. Repp drove a red Corvette

visiting a known drug user's residence, and acting in a similar fashion as those whom the police believed were purchasing drugs. The court holds that there was sufficient, objective evidence to find probable cause to apprehend Repp. Since there was probable cause, the court must look at whether a proper apprehension took place.

### Apprehension

■ Repp contends that he was not apprehended until after the results of the blood and urine tests were found positive for opiates. As stated *supra*, had there been a search it would have had to have been a search incident to apprehension under Mil.R.Evid. 314(g). The court finds that apprehension occurred on March 5, 1985 when OSI investigators escorted Repp to their offices. At that time he was apprised of the nature of charges he faced and read his rights. These actions comport with R.C.M. 302 which defines apprehension as the "taking of a person into custody." [8] An apprehension is made normally by "clearly notifying the person to be apprehended that the person is in custody." Apprehension can be implied in the circumstances. R.C.M. 302(d)(1). In the instant case, if the investigators did not state that Repp was in custody it should have been obvious to him that he was in custody. Repp was not free to go. He had been read his rights and he had knowledge of the charges. The Air Police took Repp to OSI offices. This occurred prior to any inspection or search.

### Inevitable Discovery/Harmless Error

■ Even though the court has not found that a search occurred and that had a search occurred it was a lawful search performed incident to an apprehension, the court will discuss the possibility of OSI's actions in observing Repp's forearms being improper actions. The Supreme Court and the courts of the various states have fashioned two doctrines to address improperly obtained evidence which nevertheless does not affect the outcome of the trial. The doctrines are thematically similar. The government has suggested that the harmless error doctrine is applicable. In *Chapman v. California*, 386 U.S. 18, 21–24, 87 S.Ct. 824, 826–28, 17 L.Ed.2d 705 (1967), the Court held that harmless error exists when the infringement does not rise to the level of a serious constitutional violation. For the court to find harmless error, the government must show the absence of bad faith and that the error would not have affected the outcome of the case. However, the court does not believe that the harmless error doctrine is applicable in this case. The court therefore will not discuss whether the alleged error affected the outcome since the court feels that the needle marks would have been discovered inevitably.

Under *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), the Court elucidated the concept of inevitable discovery. A conviction will not be voided for improper collection of evidence if that evidence was bound to have been discovered anyway. The court holds that the needle marks on Repp's body would have been discovered even if he had not been required to partially disrobe. Sufficient probable cause existed for apprehension. On the basis of the probable cause, the OSI would have been able to receive a search authorization to take blood samples, which themselves would have shown traces of heroin. Doubtless at the time blood samples were taken, Repp's forearms would have to have

---

with an Oregon plate. It was the description of the car that led OSI investigators to Repp.

**8.** Regarding apprehension, the Rules of Courts–Martial provide the following:

Rule 302. Apprehension

(a)(1) Definition. Apprehension is the taking of a person into custody.

\* \* \* \* \* \*

(c) Grounds for apprehension. A person subject to the code or trial thereunder may be apprehended for an offense triable by court-martial upon probable causes to apprehend. Probable cause to apprehend exists when there are reasonable grounds to believe that an offense has been or is being committed and the person to be apprehended committed or is committing it.

been exposed, showing the incriminating needle marks.

## CONCLUSION

Accordingly, the court finds that the plaintiff has failed to show that there existed any fundamental unfairness in the prior military proceedings against him. Therefore, the court must deny Repp's motion for summary judgment and grant the government's cross-motion for summary judgment.